No. 22-2454

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

ISABELLE ARANA,

    Plaintiff-Appellant,

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,

    Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN, CASE NO. 20-CV-856-WMC,
THE HONORABLE WILLIAM M. CONLEY PRESIDING

**DEFENDANT-APPELLEE'S PETITION FOR REHEARING EN BANC**

                                       JOSHUA L. KAUL
                                       Attorney General of Wisconsin

                                       BRIAN P. KEENAN
                                       Assistant Attorney General
                                       State Bar #1056525

                                       Attorneys for Defendant-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
(608) 294-2907 (Fax)
brian.keenan@wisdoj.gov

*Counsel of Record

# TABLE OF CONTENTS

RULE 40(B)(2) STATEMENT ...................................................................................1

STATEMENT ..........................................................................................................2

ARGUMENT ...........................................................................................................5

    I.    The panel decision conflicts with Supreme Court and circuit precedent. ...........................................................................................5

        A.    The panel majority departs from *Davis* on the elements of a Title IX damages claim. ..................................6

        B.    The panel majority also conflicts with Supreme Court and circuit precedent on deliberate indifference in Title IX cases in several ways. ......................9

    II.    This case presents questions of exceptional importance on which the circuit courts of appeal are divided. ............................................................................................... 13

CONCLUSION...................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Arizona*,
   82 F.4th 863 (9th Cir. 2023) ........................................................................ 15

*C.S. v. Madison Metro. Sch. Dist.*,
   34 F.4th 536 (7th Cir. 2022) ........................................................... 1, 6, 9, 12

*Davis v. Monroe Cnty. Bd. of Ed.*,
   526 U.S. 629 (1999) ........................................................................1, *passim*

*Doe v. Fairfax Cnty. Sch. Bd.*,
   1 F.4th 257 (4th Cir. 2021) ..................................................... 13–14, 15

*Doe v. Galster*,
　768 F.3d 611 (7th Cir. 2014) .................................................................... 11

*Farmer v. Kansas State Univ.*,
　918 F.3d 1094 (10th Cir. 2019) ................................................................ 15

*Fitzgerald v. Barnstable Sch. Comm.*,
　504 F.3d 165, (1st Cir. 2007) ........................................................ 7, 14, 15

*Gebser v. Lago Vista Indep. Sch. Dist.*,
　524 U.S. 274 (1998) .................................................................................. 12

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
　996 F.3d 802 (7th Cir. 2021) ...................................................................... 6

*K.T. v. Culver-Stockton Coll.*,
　865 F.3d 1054 (8th Cir. 2017) ............................................................ 13, 14

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
　944 F.3d 613 (6th Cir. 2019) ........................................................ 8, 13, 14

*Mitchell v. JCG Indus., Inc.*,
　753 F.3d 695 (7th Cir. 2014) .................................................................... 13

*Ostrander v. Duggan*,
　341 F.3d 745 (8th Cir. 2003) .................................................................... 15

*Pahssen v. Merrill Cmty. Sch. Dist.*,
　668 F.3d 356 (6th Cir. 2012) .................................................................... 15

*Reese v. Jefferson Sch. Dist. No. 14J*,
　208 F.3d 736 (9th Cir. 2000) .................................................................... 14

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*,
　477 F.3d 1282 (11th Cir. 2007) .......................................................... 14, 15

**Statutes**

20 U.S.C. § 1681(a) ........................................................................................ 5, 8

**Rules**

Fed. R. App. P. 40(b)(2)(D) ................................................................................ 1

# RULE 40(B)(2) STATEMENT

The Court should rehear this case en banc because the panel decision conflicts with *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999) and circuit precedent such as *C.S. v. Madison Metropolitan School District*, 34 F.4th 536 (7th Cir. 2022) (en banc) on the elements to sustain a Title IX claim.

The panel majority conflicts with *Davis* on whether one incident of harassment is sufficient to constitute severe and pervasive harassment, whether a school can be liable if it acts reasonably after a first incident of harassment and there is no further harassment, and whether an incident of peer-on-peer harassment that occurs off University property and not during a University program or event can sustain a claim. The panel majority also conflicts with *Davis* and circuit precedent in its application of the deliberate indifference standard for Title IX cases by second-guessing the University of Wisconsin-Madison's disciplinary decision related to known harassment.

In addition, this case presents "one or more questions of exceptional importance," Fed. R. App. P. 40(b)(2)(D), on which the circuit courts of appeal are divided. These include whether one incident of sexual harassment can constitute severe and pervasive harassment under *Davis*, whether a school must control the context where harassment occurs to be liable under Title IX, and whether a plaintiff can sustain a Title IX claim when she suffers no further

harassment after the school first becomes aware of the harassment and takes action to prevent further harassment.

As the dissent noted, this Court should rehear this case en banc "to act swiftly to bring [this] Circuit back into alignment with *Davis*." Dissent at 59.

## STATEMENT

Plaintiff Isabelle Arana was a freshman at the University of Wisconsin—Madison when her father reported an allegation of sexual misconduct to Kate Dougherty in the Dean of Students Office. (Dkt. 165 ¶ 47; 171 ¶ 8.) The father alleged that a few days earlier, Arana and a friend ("Complainant 1") went to a local bar and then to the apartment of Quintez Cephus, a fellow student and member of the University's football team. (Dkt. 112-10:141–47; 102-9:1.) The apartment was privately owned and located off the University's campus. (Dkt. 165 ¶ 52; 102-16:2.) Another fellow student and member of the football team, Danny Davis, was also there. (Dkt. 165 ¶¶ 27–28; 102-9:2; 102-5:3; 102-16:2–3.) Plaintiff, her father alleged, had been sexually assaulted by Cephus at the apartment. (Dkt. 165 ¶ 47; 104-3:1–2.)

The University responded immediately. Dougherty contacted Arana that day to tell her about the various supports and accommodations available to her. (Dkt. 165 ¶ 51; 104-5.) Arana was provided with academic accommodations. (Dkt. 165 ¶¶ 54–55.) Upon Arana's request, the University issued a no-contact order between Arana, Cephus, and Davis. (Dkt. 165 ¶¶ 63–64.) It also

suspended Cephus from the football team. (Dkt. 165 ¶¶ 61–62.) There was one issue with the no contact order when Davis and Arana were placed in the same music class; the University addressed the issue that day and were able to get Davis to drop the class. (Dkt. 165 ¶¶ 145–46, 149–52.)

The University opened an investigation into the alleged sexual misconduct under its student nonacademic misconduct code. (Dkt. 165 ¶¶ 78–83.) After the Dane County district attorney's office filed criminal charges against Cephus, he refused to be interviewed for the University's investigation and his attorney asked for the investigation to be delayed. (Dkt. 165 ¶ 126.) The University denied that request and, on October 30, 2018, relying on the information available to him at the time, an assistant dean found Cephus responsible for second- and third-degree sexual assault of Plaintiff and for sexually harassing her. (Dkt. 165 ¶¶ 178–79.)

The University's Nonacademic Misconduct Committee then conducted a non-academic misconduct hearing for Cephus, who did not testify due to the pending criminal case. (Dkt. 165 ¶¶ 183, 186.) This was the only time Arana encountered Cephus after the alleged sexual misconduct. Arana says that Cephus walked toward her, perhaps in an aggressive manner, but a University employee reminded Cephus of the no-contact order and told him to walk away if he saw Arana. (Dkt. 165 ¶ 181; 172 ¶ 25.)

Based on the evidence at that time, the Committee issued a written decision, finding that Cephus was not responsible for second-degree sexual assault, but was responsible for third-degree sexual assault and sexual harassment. (Dkt. 165 ¶¶ 204–06.) The committee recommended that Cephus should be expelled. (Dkt. 165 ¶ 207.) Cephus appealed the decision to Chancellor Rebecca Blank, who affirmed the decision. (Dkt. 165 ¶ 224.)

Cephus's criminal trial took place from July 29 through August 2, 2019. (Dkt. 165 ¶ 243.) After deliberating for about half an hour, the jury found him not guilty on all counts. (Dkt. 165 ¶ 243, 245.)

Shortly after his acquittal, Cephus filed a petition for readmission under the University's student nonacademic misconduct code. (Dkt. 165 ¶¶ 248–55.) The petition contained evidence that had not been available to the University during the prior disciplinary proceeding, including video footage of Arana, her friend, Cephus, and Davis leaving the bar and arriving at Cephus's apartment. (Dkt. 165 ¶¶ 255–56, 260, 288–94.)

Chancellor Blank discussed the petition with the University's Title IX coordinator and reviewed the new evidence. (Dkt. 165 ¶¶ 276–80, 299–300, 303–04.) She concluded that the evidence at that point "f[ell] short of the preponderance of the evidence standard required to find [Cephus] responsible for sexual assault." (Dkt. 165 ¶¶ 295, 304; 112-12:4.) Because the evidence did show, however, that Cephus had sexually harassed Plaintiff by enlisting Davis

4

to take her picture without consent, Blank kept in place the sexual-harassment finding and maintained the no-contact order. (Dkt. 165 ¶¶ 296–97, 300.)

In September 2019, the director of the University's threat intervention services met with Arana, her attorneys, and other University staff. (Dkt. 165 ¶ 321.) According to Arana, the University staff did not see an actionable threat and advised her to avoid Cephus and to call 9-1-1 if she felt threatened. (Dkt. 165 ¶ 324.) Arana never saw or heard from Cephus during that semester or ever again. (Dkt. 165 ¶¶ 335–36, 339–40.) She graduated early after the 2020 fall semester with a high grade-point average. (Dkt. 165 ¶¶ 253–54, 353; 97-3:10–12; 97 (Doe Dep. 6:9–24).) After graduating, she was accepted into the Loyola University of Chicago School of Law. (Dkt. 165 ¶ 355; 97 (Doe Dep. 10:13–19).)

## ARGUMENT

### I. The panel decision conflicts with Supreme Court and circuit precedent.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized that plaintiffs can bring a claim for money damages under this statute, but only under limited circumstances. This Court has described the

governing legal standard as "high bar," a "demanding standard," *Jauquet v. Green Bay Area Catholic Education, Inc.*, 996 F.3d 802, 808–09 (7th Cir. 2021) (citation omitted), and one that is "difficult to meet," *C.S. v. Madison Metropolitan School District*, 34 F.4th 536, 543 (7th Cir. 2022) (en banc). The panel decision departs from *Davis* in several ways and, by doing so, expands the limited cause of action the Supreme Court recognized.

### A. The panel majority departs from *Davis* on the elements of a Title IX damages claim.

First, the panel majority decision is contrary to *Davis* in allowing a claim to proceed based on one instance of student-on-student harassment. *Davis* required that harassment was "so severe, pervasive, and objectively offensive that it effectively bars the victim's of access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. *Davis* even addressed the issue of whether "a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect," and concluded that it was "unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." *Id.* at 652–53.

The panel majority concluded that this language was not binding and that a single incident of harassment "may create . . . liability 'if that incident were

vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a scholastic program or activity.'" Majority at 16–17 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172, (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246). But as the dissent noted, this holding is contrary to *Davis*, which "set out a comprehensive framework to limit the new cause of action the Court was creating," and thus its "discussion of conduct that does not suffice to create liability is integral to understanding how this framework should be applied." Dissent at 47. Further, one incident—of which the University did not know about until after it happened—does not meet *Davis*'s requirement that harassment be so "pervasive" that it "effectively bars the victims of access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633.

Second, the panel majority is contrary to *Davis* by allowing a Title IX claim to proceed when the University responded to the only known incident of student-on-student harassment and no further harassment followed. When "a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment." *Davis*, 526 U.S. at 644 (alteration in original). While the *Davis* court did use the phrase "make them liable or vulnerable" to harassment, *id.* at 645, it was defining what subjecting a student to harassment means, and

7

one cannot be subject to harassment in the absence of actual harassment. The panel majority latched on to the "or vulnerable language," but this isolated phrase is inconsistent with *Davis*'s holding and reasoning.

As the dissent recognized, to be liable under *Davis,* a school must subject a student to harassment. Dissent at 56. This requires that the school take inadequate action that makes the victim vulnerable to further harassment, but "there still must be further harassment." Dissent at 57 (citing *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 628–29 (6th Cir. 2019) (Thapar, J., concurring). If a school's allegedly insufficient actions do not lead to further harassment, the school has not subjected the student to harassment. This is particularly true in instances of peer harassment, where the school can only act after it becomes aware of an incident of harassment, yet it can now be liable for taking actions (and here the University took significant actions to address the harassment) that do not even result in further harassment.

Third, *Davis* holds that "because the harassment must occur 'under' 'the operations of' a funding recipient, the harassment must take place in a context subject to the school district's control." 526 U.S. at 645 (quoting 20 U.S.C. § § 1681(a), 1687). The court held that the statutory language and structure "combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* Here, the harassment took place

8

in an off-campus apartment during late-night hours. The panel majority did not address this issue, concluding it has been waived. Majority at 14.[1] The dissent concluded that this issue was sufficiently developed. Dissent at 45. This Court can bring its precedent into harmony with *Davis* by recognizing that control over the context of the harassment is not the same as the ability to discipline the harasser. Such a view of Title IX risks expanding Title IX liability to actions that students take anywhere in the world so long as the school can later discipline the student for those actions, even though the school would have had no ability to stop that harassment in the first instance.

> **B. The panel majority also conflicts with Supreme Court and circuit precedent on deliberate indifference in Title IX cases in several ways.**

The panel decision is inconsistent with *Davis*'s admonition that a plaintiff does not "have a Title IX right to make particular remedial demands" and therefore "courts should refrain from second-guessing the disciplinary decisions made by school administrators," 526 U.S. at 648. Likewise, this Court has held that "[t]he response does not have to be perfect or even successful." *C.S.*, 34 F.4th at 543. The panel's decision, however, is an exercise in second-guessing the University's disciplinary decision. Here, the University responded immediately to the harassment, offered accommodations to Arana, and even

---

[1] The University agrees with the dissent that the issue was sufficiently developed below. Regardless, several other issues remain that warrant en banc review.

9

expelled Cephus. Arana only takes issue with what happened after Cephus was acquitted of criminal charges related to the incident, when the University reinstated Cephus but continued the no-contact order to prevent further harassment. The University did not turn a blind eye to harassment by failing to take any action, and its actions were not "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

The panel majority concluded that a jury could find the University liable because (1) it might have been pressured into reinstating Cephus and (2) it might not have intended to enforce the no-contact order. Majority at 26–32. Both these contentions, however, propose that the University could be liable not based on its actual acts, but rather a jury's speculation the University's motivations in making that decision.

The panel majority thought that the new evidence provided after Cephus's acquittal "does not undermine" the original finding "as much as the University suggests." Majority at 27. It is hard to imagine what constitutes second-guessing a University's decision is if not a court's reweighing the evidence that Chancellor Blank considered and determining this was unreasonable due to speculation about her motives. As the dissent noted, if a court can hold "that a reasonable jury could disagree with the conclusions the University drew from the evidence, the line between honest mistake and bad faith collapses." Dissent at 52. Nor is the timing of the Chancellor's decision even remarkable given that

(1) Cephus filed his petition after he was acquitted in early August and (2) to be meaningful, readmission should be decided before the start of the school year.

Moreover, the holding that the University did not intend to enforce the no-contact order is also based on speculation. The University enforced the order in the past, and the only evidence it might not enforce the order in the further was an official's advice that Arana could call 9-1-1 if she did not feel safe and avoid Cephus if she saw him. But a no-contact order, like a restraining order, is not a force field that prevents individuals from approaching each other, whether intentionally or inadvertently. Thus, it is entirely possible that Cephus could be in Arana's general area on campus (although unlikely given the campus's size), and the University's advice did not show any intent not to enforce the order. And, in any event, there was no violation of the order after Cephus was reinstated.

In addition, the panel decision is inconsistent with circuit precedent on the notice sufficient to establish deliberate indifference. This Court recognizes that "the standard set out in *Davis* is not satisfied by knowledge that something might be happening and could be uncovered by further investigation." *Doe v. Galster*, 768 F.3d 611, 617–18 (7th Cir. 2014). Here, the University knew of one incident of harassment, to which it responded swiftly. Many months after that incident, the University decided to readmit Cephus with a no-contact

11

order. The University had no knowledge of Cephus threatening to violate the order.

Similarly, the panel majority's reasoning is inconsistent with *C.S.* In that case, a school principal became aware that a school employee had an inappropriate relationship with a student, *C.S.* 34 F.4th at 546. The principal discussed the issue with the employee and told him "to 'limit' the 'hugs and physical contact' with C.S., avoid interacting with her in private settings, and set 'strong boundaries' in his relationship with her." *Id.* This Court held "[t]he record is clear that this response was not so unreasonable as to amount to 'deliberate indifference to discrimination.'" *Id.* at 547 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). The panel majority's second-guessing of the University's actions is inconsistent with this holding.

Further, the principal's action in *C.S.* arguably led to more harassment given that, following the warning, the employee sexually assaulted the student during the next school year. *Id.* at 545. The school was not liable for these incidents, though, because it did not have knowledge of them, and "Title IX does not permit institutional liability based solely on knowledge of the risk of future misconduct." *Id.* Here, in contrast, the panel majority holds that the University can be liable when it did not even know there was a risk of future harassment that would violate the no-contact order, and when the asserted risk of future harassment never materialized.

## II. This case presents questions of exceptional importance on which the circuit courts of appeal are divided.

In addition, the panel decision touched on three important legal issues under Title IX on which there are splits among the circuit courts of appeal, warranting review by this Court en banc. *See Mitchell v. JCG Indus., Inc.*, 753 F.3d 695, 699 (7th Cir. 2014) (Posner, J., concurring) (recognizing "intercircuit conflict as a basis for rehearing en banc").

First, there is disagreement among the circuits about whether one incident of harassment is sufficient to meet *Davis*'s requirement of harassment that is "severe, pervasive, and objectively offensive." 526 U.S. at 651. The Sixth Circuit read *Davis* as holding "that a single incident would nonetheless fall short of Title IX's requirement of 'systemic' harassment." *Kollaritsch* 944 F.3d at 620. Similarly, the Eighth Circuit held that a singular allegation of sexual assault "on its own does not plausibly allege pervasive discrimination as required to state a peer harassment claim." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1059 (8th Cir. 2017).

The panel majority sided with the First and Fourth Circuits, which have held that a school "may be held liable under Title IX based on a single, pre-notice incident of severe sexual harassment." *Doe v. Fairfax Cnty. Sch. Bd.*,

1 F.4th 257, 274 (4th Cir. 2021); *Fitzgerald*, 504 F.3d at 172. Given this split of authority, this Court should review the case en banc.[2]

Second, the circuits are divided on the question of whether a school can be held liable when there are no further incidents of harassment after it has knowledge of harassment on the theory, that its actions left the plaintiff more vulnerable to harassment that did not end up occurring. The Sixth, Eighth, and Ninth Circuits hold that a school can be deliberately indifferent only when its actions result in a further incident of harassment. *Kollaritsch*, 944 F.3d at 623 (We hold that the plaintiff must plead, and ultimately prove . . . some further incident of actionable sexual harassment"); *K.T.*, 865 F.3d at 1058 (upholding dismissal when "the response cannot be characterized as deliberate indifference *that caused the assault*"); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000). As the Ninth Circuit reasoned there was "no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis*, the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment." *Reese*, 208 F.3d at 740.

---

[2] The panel majority and dissent disagree on where the Eleventh Circuit's decision in *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282 (11th Cir. 2007) lies on this issue. *Compare* Maj. at 16–17 & n.6, *with* Dissent at 48–49. Either way, there is disagreement among the circuits on this issue.

14

The First, Fourth, Tenth, and Eleventh Circuits hold that a school's actions need only make harassment more likely even if it does not occur. *Fitzgerald*, 504 F.3d at 172; *Fairfax Cnty. Sch. Bd.*, 1 F.4th at 274; *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1105 (10th Cir. 2019); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295–97 (11th Cir. 2007).

Lastly, there is disagreement regarding whether an incident of harassment that takes place off-campus, before the school had knowledge of the harassment, can subject the school to liability under Title IX. The Sixth and Eighth Circuits hold that such off-campus incidents cannot lead to liability. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012); *Ostrander v. Duggan*, 341 F.3d 745, 750–51 (8th Cir. 2003). The Ninth Circuit holds that discrimination can occur if the school has disciplinary power over the harasser for off-campus acts. *Brown v. Arizona*, 82 F.4th 863, 878 (9th Cir. 2023) (en banc).

Given the disagreement among the circuits on these three issues, this case presents issues of importance that warrant en banc review.

# CONCLUSION

For the foregoing reasons, this Court should grant the petition for rehearing en banc.

Dated this 25th day of July 2025.

                                          Respectfully submitted,

                                          JOSHUA L. KAUL
                                          Attorney General of Wisconsin

                                          <u>s/ Brian P. Keenan</u>*
                                          BRIAN P. KEENAN
                                          Assistant Attorney General
                                          State Bar #1056525

                                          Attorneys for Defendant-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
(608) 294-2907 (Fax)
brian.keenan@wisdoj.gov

**Counsel of Record*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This petition complies with the type-volume limitation of Fed. R. App. P. 40(b)(2), typeface requirements of Fed. R. App. P. 32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6).

This petition contains 3581 words, excluding the parts exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13-point Century Schoolbook.

# CERTIFICATE OF SERVICE

I certify that on July 25, 2025, I electronically filed the foregoing Defendant-Appellee's Petition for Rehearing En Banc with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 25th day of July 2025.

s/ Brian P. Keenan
BRIAN P. KEENAN
Assistant Attorney General
