## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

ISABELLE ARANA,
*Plaintiff-Appellant,*

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 3:20-cv-856
The Honorable William M. Conley

## PLAINTIFF-APPELLANT'S RESPONSE TO
## DEFENDANT-APPELLEE'S
## PETITION FOR REHEARING EN BANC

John Clune
Christopher Ford
Lucy Walker
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
clune@hbcboulder.com
ford@hbcboulder.com
walker@hbcboulder.com

Alexandra Z. Brodsky
Adele P. Kimmel
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net
akimmel@publicjustice.net

Counsel for Plaintiff-Appellant
*Additional Counsel on Inside Cover*

Robert Theine Pledl

Davis & Pledl S.C.

1433 N. Water Street, Suite 400

Milwaukee, WI 53202

(414) 488-1354

rtp@davisandpledl.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Alexandra Z. Brodsky    Date: August 28, 2025

Attorney's Printed Name: Alexandra Z. Brodsky

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 1620 L Street NW, Suite 630

Washington, DC 20036

Phone Number: 202-797-8600    Fax Number:

E-Mail Address: abrodsky@publicjustice.net

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Isabelle Arana

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ John Clune Date: August 28, 2025

Attorney's Printed Name: John Clune

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 921 Walnut Street, Suite 200

Boulder, Colorado 80302

Phone Number: 303-442-6514 Fax Number:

E-Mail Address: john.clune@hbcboulder.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ Christopher Ford     Date: August 28, 2025

Attorney's Printed Name: Christopher Ford

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: 921 Walnut Street, Suite 200

Boulder, Colorado 80302

Phone Number: 303-442-6514     Fax Number: 

E-Mail Address: chris.ford@hbcboulder.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Adele P. Kimmel      Date: August 28, 2025

Attorney's Printed Name: Adele P. Kimmel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 1620 L Street NW, Suite 630

Washington, DC 20036

Phone Number: 202-797-8600      Fax Number:

E-Mail Address: akimmel@publicjustice.net

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)      If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ Robert Theine Pledl      Date: August 28, 2025

Attorney's Printed Name: Robert Theine Pledl

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: 1661 N. Water Street - Suite 410

Milwaukee, WI 53202

Phone Number: 414-667-0390      Fax Number: 

E-Mail Address: rtp@davisandpledl.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐          **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Isabelle Arana

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ Lucy Walker          Date: August 28, 2025

Attorney's Printed Name: Lucy Walker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address: 921 Walnut Street, Suite 200

 Boulder, Colorado 80302

Phone Number: 303-442-6514          Fax Number:

E-Mail Address: lucy.walker@hbcboulder.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ........................................................................ 1

BACKGROUND .......................................................................... 2

ARGUMENT ............................................................................ 5

I.    The decision does not conflict with circuit precedent ............................ 5

II.   The decision does not conflict with Supreme Court precedent ........................................................................ 8

III.  This case does not present questions of exceptional importance............................................................... 13

CONCLUSION.......................................................................... 15

CERTIFICATE OF COMPLIANCE ................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Arana v. Bd. of Regents of Univ. of Wis. Sys.*,
   142 F.4th 992 (7th Cir. 2025) ................................................................*passim*

*C.S. v. Madison Metropolitan School District*,
   34 F.4th 536 (7th Cir. 2022) ........................................................................7

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   596 U.S. 212 (2022) ................................................................................. 15

*Davis v. Monroe County Board of Education*,
   526 U.S. 629 (1999) ...........................................................................*passim*

*Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*,
   35 F.4th 459 (6th Cir. 2022) ................................................................... 14

*Doe v. Fairfax Cnty. Sch. Bd.*,
   1 F.4th 257 (4th Cir. 2021) ..................................................................... 14

*Doe v. Galster*,
   768 F.3d 611 (7th Cir. 2014) ................................................................ 5, 6

*Easley v. Reuss*,
   532 F.3d 592 (7th Cir. 2008) ....................................................................1

*Farmer v. Kan. State Univ.*,
   918 F.3d 1094 (10th Cir. 2019) ......................................................... 11, 14

*Fitzgerald v. Barnstable Sch. Comm.*,
   504 F.3d 165 (1st Cir. 2007) ................................................................... 14

*Hall v. Millersville Univ.*,
   22 F.4th 397 (3d Cir. 2022) .................................................................... 10

*HM Holdings, Inc. v. Rankin*,
   72 F.3d 562 (7th Cir. 1995) ......................................................................1

*Hull v. Cundiff*,
   797 F.3d 948 (11th Cir. 2015) ................................................................ 14

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ...................................................................... 10

*K.T. v. Culver-Stockton Coll.*,
    865 F.3d 1059 (8th Cir. 2017) ..................................................... 15

*Karasek v. Regents of Univ. of Cal.*,
    956 F.3d 1093 (9th Cir. 2020) ..................................................... 14

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
    944 F.3d 613 (6th Cir. 2019) ........................................................ 14

*Mitchell v. JCG Indus., Inc.*,
    753 F.3d 695 (7th Cir. 2014) ..........................................................1

*Thomas v. Clements*,
    797 F.3d 445 (7th Cir. 2015) ........................................................ 13

*United States v. Corner*,
    598 F.3d 411 (7th Cir. 2010) ........................................................ 13

*Wamer v. Univ. of Toledo*,
    27 F.4th 461 (6th Cir. 2022) .................................................. 11, 14

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*,
    477 F.3d 1282 (11th Cir. 2007) ................................................... 14

**Statute**

20 U.S.C. § 1681(a) ...................................................................... 10, 11

**Other Authorities**

Webster's Third New International Dictionary (1993).................................... 11

Note, *Without Remedies: The Effect of* Cummings *and the Con-*
    *tract-Law Analogy on Antidiscrimination Spending Clause*
    *Plaintiffs*, 138 Harv. L. Rev. 1407 (2025) .................................... 15

# INTRODUCTION

The Board of Regents of the University of Wisconsin System would prefer not to face a trial in this fact-intensive Title IX case, and would like this Court to go en banc to save it from that fate. But the "function of en banc hearings is not to review alleged errors for the benefit of losing litigants." *HM Holdings, Inc. v. Rankin*, 72 F.3d 562, 563 (7th Cir. 1995). It is not to reassess "fact-bound" questions about whether the panel correctly applied a legal standard to a case's unique record. *Mitchell v. JCG Indus., Inc.*, 753 F.3d 695, 700 (7th Cir. 2014) (Posner, J., concurring). "Given the heavy burden that en banc re-hearings impose on an already overburdened court, such proceedings are re-served for the truly exceptional cases." *Easley v. Reuss*, 532 F.3d 592, 594 (7th Cir. 2008) (citation modified).

This is not one of those cases. Here, this Court applied an established legal standard to unique facts. The decision does not, as the University claims, conflict with circuit precedent or a Supreme Court decision. One of the phantom conflicts the University raises concerns an issue the Court did not even reach. Nor does the decision create any circuit splits: It adopted its sister circuits' consensus view on two legal questions. The Court should deny the University's petition for rehearing en banc.

# BACKGROUND

1. Here is the short version. When Isabelle Arana was a freshman at the University of Wisconsin – Madison, she and another female classmate were repeatedly raped, over the course of a night, by a star University football player, Quintez Cephus. S.A. 37-42; Dkt. No. 103-6 at 5; Dkt. No. 124 ¶ 351. Between rapes, Cephus enlisted his friend to take revealing photos of the victims. *See Arana v. Bd. of Regents of Univ. of Wis. Sys.*, 142 F.4th 992, 995 (7th Cir. 2025). After Isabelle's father reported the rapes to the University, it ordered Cephus not to contact Isabelle. *Id.* at 994-95. It then conducted a four-month disciplinary investigation and convened a live disciplinary hearing. *Id.* at 995. When Cephus entered the building where the hearing would occur, he bee-lined for Isabelle "in an attempt . . . to intimidate her." *Id.* Isabelle's attorney "had to step in front of [him] to stop him from physically coming into contact with" Isabelle. Dkt. No. 124 ¶ 181. The attorney "reported the incident as a violation of the no-contact order." 142 F.4th at 995.

The disciplinary board found by a preponderance of the evidence that Cephus was responsible for sexually assaulting both women. *Id.* at 995-96. The board also found that Cephus's continued presence on campus would create a hostile environment for the women that would continue to interfere with their educations. *Id.* at 996. Cephus unsuccessfully appealed, twice. *Id.* From the receipt of the complaint to the denial of the final appeal, the University's

process took over a year. *Id.*

After a separate criminal trial, a jury found Cephus not guilty of sexually assaulting Isabelle under a "beyond a reasonable doubt" standard. *Id.* The elements of the charged crime differed from the elements of the school rule the University found Cephus had violated, which mirrored those of a lower-degree state crime. *Id.* Soon after the acquittal, Cephus filed a petition for readmission with the University's chancellor. *Id.* The petition purported to contain new evidence. *Id.* In the days following the filing, the University met repeatedly with Cephus's counsel. *Id.* at 997. "The University did not speak to [Isabelle] or any of her legal team, none of whom had been informed of the petition or given a chance to review the newly submitted evidence." *Id.*

The University heard from many others, though. High-level donors, football fans, and the football team demanded the University quickly readmit Cephus so he could play in the fall football season. *Id.* "Within 48 hours of receiving the petition, [the c]hancellor . . . received letters from five donors who each had given at least $1,000,000 and possibly over $100,000,000 collectively to the University. The letter writing campaign was initiated by Ted Kellner, whose name adorned the University's football buildings; he had recently made a significant revocable pledge to the University." *Id.* The football team wrote the chancellor "a letter urging her to readmit Cephus" and "players took part in a press conference staged by Cephus and his legal team, perceived by the

[c]hancellor to be part of a pressure campaign for [his] reinstatement." *Id.* The University also tracked a hashtag supporting Cephus as it circulated widely on social media, and many fans tagged the chancellor personally. *Id.*

Thirteen days after Cephus filed his petition, the chancellor vacated the University's disciplinary findings and readmitted him. *Id.* Two weeks later, Isabelle returned to campus to begin the new semester. *Id.* at 998. "Worried that the no-contact order would prove insufficient because Cephus had previously violated it," Isabelle and her counsel met with University officials in hopes they would develop a safety plan to keep Cephus and Isabelle apart. *Id.* "In an about-face from their prior proactive stance, the two University personnel rejected Arana's concerns because they saw no actionable threat, and told her instead to try avoiding Cephus and to call 9-1-1 if she felt threatened." *Id.* So Isabelle lived in fear whenever she was on campus. Dkt. No. 156 ¶ 9. To keep herself safe and avoid Cephus, she withdrew from University life. She "skipped classes, did not use the student union or communal study spaces, and avoided walking through parts of campus where she might run into Cephus. [She] also reduced her attendance at sorority events, opting to stay in her apartment or return home to Chicago on weekends." 142 F.4th at 998. Because of "her fear and anxiety," she "transferred from advanced to easier courses." *Id.* Her "reduced courseload delayed graduation by a semester, which in turn delayed her matriculation into law school by a full year." *Id.*

2. In 2020, Isabelle filed a lawsuit against the University. *Id.* She alleged that the University was liable under Title IX of the Education Amendments of 1972 for its deliberate indifference to the sexual harassment she experienced. *Id.* When the University and Isabelle both filed motions for summary judgment, the district court granted the University's. *Id.* at 998-99. The court recognized that a jury could find that the University's handling of Isabelle's report was clearly unreasonable, and that its decision to readmit Cephus was motivated by public and donor pressure. *Id.* at 998. Yet it concluded that Isabelle had not proved that she was deprived of educational opportunities, as required for a Title IX claim, noting that her grades remained strong after the assaults. *Id.* at 998-99. Isabelle appealed. Dkt. No. 203. On July 11, 2025, this Court reversed and remanded. *See* 142 F.4th at 1009.

## ARGUMENT

## I. The decision does not conflict with circuit precedent.

The University is wrong that the panel decision "conflicts with . . . circuit precedent." Pet. 1. Its arguments are no more than an invitation for this Court to engage in fact-bound error correction in the absence of error.

1. The University says that the panel decision conflicts with this Court's holding, in *Doe v. Galster*, that "the standard set out in *Davis* [*v. Monroe County Board of Education*, 526 U.S. 629 (1999),] is not satisfied by knowledge that something might be happening and could be uncovered by further

investigation." *Id.* at 11 (quoting *Galster*, 768 F.3d 611, 617-18 (7th Cir. 2014)). The University asserts that that rule is incompatible with the panel's determination that a jury could find deliberate indifference where, in the University's telling, it "had no knowledge of Cephus threatening to violate [its no-contact] order" when it readmitted him. *Id.* at 11-12.

That is wrong on the law and the facts. First, the law. The language the University quotes from *Galster* concerned *Davis*'s "actual knowledge" element, not deliberate indifference. *See* 768 F.3d at 617-18; *see also id.* at 619-22 (separately addressing deliberate indifference). *Galster* did not speak to how predictable the results of a school's indifference must be. Rather, it affirmed *Davis*'s holding that a school will not be liable for a response to harassment that it "could [have] uncovered" but did not actually know about. *Id.* at 617-18. The University has never disputed that it had actual knowledge of Cephus's harassment of Isabelle here. *See, e.g.*, *Arana*, 142 F.4th at 998.

Second, the facts. This Court noted the University knew that "Cephus had previously violated the no-contact order at the very time and place one would expect him to be on his best behavior": his disciplinary hearing. *Arana*, 142 F.4th at 1009. So there was "reason to fear" he might violate the order again. *See id.* Perhaps the University disagrees with that assessment of the factual record. But that is no reason for en banc review.

2. The University also says (at 12) that this Court should go en banc

because the decision conflicts with *C.S. v. Madison Metropolitan School District*, 34 F.4th 536 (7th Cir. 2022) (en banc). By the University's telling, it could not have been deliberately indifferent if the school in *C.S.* was not. But *C.S.* was a very different case that called for a different result. There, a school learned that a teacher "regularly gave students—boys and girls alike—hugs, often apparently initiated by the students themselves," as well as shoulder rubs. *Id.* at 546. The plaintiff, a student, also tried to kiss the teacher on the cheek, "though he rebuffed her efforts." *Id.* The school's principal told the teacher "to impose strong boundaries in his interactions with" the student-plaintiff. *Id.* at 547. And the principal never "learn[ed] that [the teacher] was disregarding her directive." *Id.* at 548. Tragically, the teacher went on to abuse the student-plaintiff the following year. *See id.* But this Court held that the school could not be liable because its response to the conduct of which it had actual notice—the hugging, shoulder rubs, and student-initiated attempted kiss—was not clearly unreasonable. *See id.* at 547-58.

This case presents a more unreasonable response to more serious known misconduct. Here, the University received and substantiated reports that Cephus had repeatedly sexually assaulted two students and had recruited a classmate to take revealing photos of them without their consent. *See supra* p. 2. Yet the school re-admitted Cephus under public pressure, and—despite knowing he had previously violated its no-contact order—refused to take any further

7

safety measures to protect Isabelle. *See supra* pp. 4, 6.

There is no conflict between these results: One school may be liable while another, on different facts, is not. And this Court does not, and should not, go en banc to double check a panel's fact-bound analysis. *See supra* p. 1.

## II.  The decision does not conflict with Supreme Court precedent.

The University is similarly wrong that this Court's decision conflicts with *Davis*. The panel faithfully applied that precedent.

1. The University (at 9-12) asks this Court to go en banc on the basis that, under *Davis*, it was not deliberately indifferent. As with its putative intra-circuit split, this supposed conflict with Supreme Court precedent is no more than a request to relitigate a fact-specific and -intensive question. The University is right that *Davis* held that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." Pet. 9 (quoting *Davis*, 526 U.S. at 648). But *Davis*'s deliberate indifference test also requires courts to assess whether a school's response to harassment is "clearly unreasonable." 526 U.S. at 648-49. It does not require—or allow—absolute deference.

In concluding that a jury could find the University was deliberately indifferent, this Court's decision followed *Davis*. As it explained at length, its decision does not mean "that a school can be held liable under Title IX simply because an official draws the wrong conclusion from a good-faith evaluation of the evidence." *Arana*, 142 F.4th at 1007. And the decision was clear, too, that

8

the University was not required to adopt any particular disciplinary remedy. *See id.* at 1008. Rather, this Court held that "a jury could decide" that the University readmitted Cephus "because of a public pressure campaign," that it "had no interest in enforcing the [no-contact] order after Cephus's readmission," and that "sacrificing Arana's interest in an educational environment free from sex discrimination on the altar of the football program" was "clearly unreasonable." *Id.* at 1007-08. That is not impermissible second-guessing. It is a deliberate indifference analysis. And even if different judges could draw the line between the two at different places, or view the fact-intensive record differently, the decision does not conflict with *Davis.*

2. The University says that this Court should go en banc because, in its view, *Davis* forecloses liability for a school's deliberate indifference to harassment that takes "place in an off-campus apartment during late-night hours." Pet. 8-9. But, as the University concedes, "[t]he panel majority did not address this issue, concluding it has been waived." *Id.* at 9. A decision cannot conflict with Supreme Court precedent on an issue the decision did not reach.

3. The University asserts (at 7-8) that the Court's decision conflicts with *Davis* in holding that a school may be liable when its deliberate indifference causes a student educational injuries but not further harassment. Not so. As the overwhelming majority of appeals courts have recognized, this Court's interpretation of *Davis* is correct. *See infra* pp. 13-14.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, [1] be excluded from participation in, [2] be denied the benefits of, or [3] be subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a). "The statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender." *Davis*, 526 U.S. at 650.

In *Davis*, the Supreme Court emphasized that a plaintiff states a claim against a school not for the third-party's underlying harassment but rather based on the defendant's "own misconduct . . . in the face of known student-on-student harassment." *Id.* at 640-41. That "deliberate indifference to sexual harassment of a student . . . constitutes 'discrimination' 'on the basis of sex'" forbidden by Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (quoting *Davis*, 526 U.S. at 643). Thus, a school may be liable "for deliberate indifference that results in a student being excluded from participation in, being denied the benefits of, or being subjected to discrimination under its programs." *Hall v. Millersville Univ.*, 22 F.4th 397, 409 n.4 (3d Cir. 2022).

Consistent with the text, *Davis* explained a school can be liable for its own deliberate indifference that "cause[s] students to undergo harassment or make[s] them liable or vulnerable to it." 526 U.S. at 645 (citation modified). In using the disjunctive, *Davis* "clearly indicates that plaintiffs can state a viable Title IX claim by alleging alternatively *either* that [the defendant]'s deliberate

indifference to their reports of rape caused plaintiffs 'to undergo' [additional] harassment *or* 'made them liable or vulnerable' to it." *Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103 (10th Cir. 2019) (citation modified) (quoting *Davis*, 526 U.S. at 645). Vulnerability requires only a potential for harassment. *E.g.*, *Vulnerable*, Webster's Third New International Dictionary 2566-67 (1993) (defining "vulnerable" to mean "*capable* of being wounded" or "*open* to attack or damage" (emphases added)). A school may be liable, then, when its deliberate indifference "make[s]" a plaintiff "vulnerable" to abuse, regardless of whether further harassment actually occurs. *E.g.*, *Farmer*, 918 F.3d at 1103-04.

This rule makes sense because continuing harassment is not necessary for a school's deliberate indifference to "exclude[]" victims, "den[y]" them the recipient's "benefits," or otherwise "subject[ them] to discrimination." 20 U.S.C. § 1681(a). That is clear where, as here, a "student is put in the position of choosing to forego an educational opportunity in order to avoid contact with the harasser, or to continue attempting to receive the educational experience tainted with the fear of further harassment." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (6th Cir. 2022). "Title IX's protections would mean little if a school could avoid liability by relying on students to protect themselves by curtailing engagement in educational opportunities, the very result the law seeks to prevent." *Arana*, 142 F.4th at 1008.

4. The University also contends (at 6-7) that *Davis* requires a student to

be sexually assaulted multiple times before a school is obligated to respond. For this reason, it argues this Court was wrong to hold that a school may be liable for its deliberate indifference to a "single incident[] of harassment . . . if that incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a scholastic program or activity." *Id.* at 1001. Appeals courts nearly unanimously agree that this Court's interpretation is right. *See infra* pp. 14-15.

Looking to Title IX's text, *Davis* explained that, for harassment to trigger a school's obligation to act, it must be significant enough "that the victim-students are effectively denied equal access to an institution's resources and opportunities." 526 U.S. at 651. *Davis* predicted that a single incident would usually not rise to that level. *See id.* at 652-53. But those facts were not before it. *See id.* And "[g]iven the potential life-altering and lasting impact of sexual assault, it is entirely conceivable that an instance of harassment may be sufficiently severe and pervasive to 'differ markedly from the rarely actionable, theoretical single incident mentioned in *Davis* . . . .'" *Arana*, 142 F.4th at 1001 (quoting *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1298 (11th Cir. 2007)). Plus, this Court correctly recognized that, when "administrators respond in an unreasonable manner" "to a report of egregious harassment, . . . fear and apprehension casts a pervasive shadow across the student's schooling." *Id.* at 1002. This case demonstrates as much. The combination of the

harassment and the University's deliberate indifference had the "systemic effect of denying [Isabelle] equal access to an educational program or activity." *Davis*, 526 at 652. This Court's holding is consistent with *Davis*.[1]

### III. This case does not present questions of exceptional importance.

1. This case is very important to Isabelle. But it is fact-bound, not deserving of this Court's review en banc. The University's only argument to the contrary (at 13-15) is that the decision implicates three putative circuit splits. That is unpersuasive. By the University's own telling, these disagreements existed before this decision. "[T]here is little point in granting rehearing en banc to move this circuit from one side of a conflict to another." *Thomas v. Clements*, 797 F.3d 445, 446 (7th Cir. 2015) (Easterbrook, J., concurring); *see United States v. Corner*, 598 F.3d 411, 414 (7th Cir. 2010) (noting "reconsideration is more appropriate when this circuit can eliminate [a] conflict"). Plus, the panel did not reach one of these supposed conflicts, about off-campus harassment. *See supra* p. 9. For the other two questions, the Court adopted the consensus positions: Only one appeals court disagrees, and only some of the time.

1a. Courts agree that a school may be liable if its post-notice deliberate indifference causes a cognizable Title IX injury, even if the plaintiff is not harassed again. The First, Fourth, Tenth, and Eleventh Circuits have taken this

---

[1] Isabelle could satisfy a more onerous standard. Cephus assaulted her repeatedly, he "conspired . . . to . . . tak[e] nonconsensual photographs of her," and the University determined that he created a hostile environment for her post-assault. 142 F.4th at 1001 n.6, 1004.

position for all cases. *See Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 274 (4th Cir. 2021); *Farmer*, 918 F.3d at 1103, 1106; *Williams*, 477 F.3d at 1296; *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172-73 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009). The Sixth Circuit adopted a different rule in 2019. *See Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 623-24 (6th Cir. 2019). But it has since rolled its position back twice, adopting the majority rule for cases concerning high schools or staff-on-student harassment. *See Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 467-68 (6th Cir. 2022); *Wwamer*, 27 F.4th at 463. And contrary to the University's telling, the Eighth and Ninth Circuits have not adopted its view. *See, e.g.*, *Farmer*, 918 F.3d at 1108 (distinguishing Eighth and Ninth Circuit cases); *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1106 n.2 (9th Cir. 2020) (declining to "express [an] opinion on the circuit split").

1b. This Court also joins the consensus of its sister circuits in concluding that a student does not need to be raped multiple times before Title IX requires a school to respond. *See Arana*, 142 F.4th at 1001; *Fairfax*, 1 F.4th at 274; *Fitzgerald*, 504 F.3d at 172; *Williams*, 477 F.3d at 1297-98; *Hull v. Cundiff*, 797 F.3d 948, 973 (11th Cir. 2015); *see also Wamer*, 27 F.4th at 468 (agreeing for staff-on-student claims). Once again, the only court to disagree is the Sixth Circuit, and only for a subset of Title IX claims. *See Wamer*, 27 F.4th at 468. The University is wrong about the Eighth Circuit. That court held that the

plaintiff's "allegation of a single sexual assault," absent blunders by the school, was not "pervasive discrimination." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1059 (8th Cir. 2017). It did not hold that a single assault never could be. And it echoed this Court in acknowledging that a student could establish the required "systemic effect" by pointing to a combination of "the alleged misconduct" and the school's "response." *Id.* at 1059.

2. This case is also not one of exceptional importance warranting en banc review because of a recent development in damages law. In 2022, the Supreme Court held emotional distress damages are no longer available under Spending Clause statutes. *Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212, 230 (2022). Emotional distress has traditionally constituted the bulk of students' damages in Title IX cases. *See id.* at 235-36 (Breyer, J., dissenting). Given the newly limited value of these suits to both plaintiffs and attorneys, Title IX litigation is on the decline. *See, e.g.*, Note, *Without Remedies: The Effect of* Cummings *and the Contract-Law Analogy on Antidiscrimination Spending Clause Plaintiffs*, 138 Harv. L. Rev. 1407, 1420-26 (2025). So these questions are now relevant to fewer cases, and their financial stakes are lower.

## CONCLUSION

The Court should deny the University's petition for rehearing en banc.

August 28, 2025                Respectfully submitted,

/s/ *Alexandra Z. Brodsky*
Alexandra Z. Brodsky
Adele P. Kimmel
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net
akimmel@publicjustice.net

John Clune
Christopher Ford
Lucy Walker
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street
Suite 200
Boulder, CO 80302
(303) 442-6514
clune@hbcboulder.com
ford@hbcboulder.com
walker@hbcboulder.com

Robert Theine Pledl
DAVIS & PLEDL S.C.
1433 N. Water Street
Suite 400
Milwaukee, WI 53202
(414) 488-1354
rtp@davisandpledl.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limitation of this Court's July 25, 2025, order and Federal Rule of Appellate Procedure 40(d) because it is less than fifteen pages and 3,776 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 13-point Century Schoolbook font.

Dated: August 28, 2025        */s/ Alexandra Z. Brodsky*
Alexandra Z. Brodsky
*Counsel for Plaintiff-Appellant*