No. 22-2454

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

---

ISABELLE ARANA,

      Plaintiff-Appellant,

  v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,

      Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN, THE HONORABLE WILLIAM M.
CONLEY PRESIDING

---

## SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLEE

---

JOSHUA L. KAUL
Attorney General of Wisconsin

BRIAN P. KEENAN*
Assistant Attorney General
State Bar #1056525

Attorneys for Defendant-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
(608) 294-2907 (Fax)
brian.keenan@wisdoj.gov

*Counsel of Record

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

STATEMENT OF THE ISSUES ..................................................2

STATEMENT OF THE CASE ........................................................3

    I.    Facts ...................................................................................3

        A.    The University receives a report of sexual assault and takes action. ......................................3

        B.    Cephus is acquitted at his criminal trial, and the University grants his petition for readmission while keeping the no-contact order in place. ..........................................5

        C.    High-level University staff meet with Arana, who does not see Cephus again. ..........................6

    II.    Procedural history .......................................................7

        A.    The district court grants the University's summary judgment motion. .................................7

        B.    The panel reverses the district court's judgment. ..................................................................9

SUMMARY OF THE ARGUMENT ............................................. 10

STANDARD OF REVIEW .............................................................. 10

ARGUMENT ...................................................................................... 11

    I.    Arana's claim fails because the University did not subject her to harassment that was pervasive. ........................... 11

        A.    There was not pervasive harassment. ............................... 11

        B.    The University's response did not subject Arana to harassment. ......................................... 13

C.    The one incident of harassment did not take place in an environment substantially controlled by the University. ............................................... 17

II.    No reasonable jury could find that the University acted with deliberate indifference. ............................................... 19

A.    The panel majority's reasoning is inconsistent with Supreme Court and circuit precedent. ....................... 19

B.    On similar facts, the Eighth Circuit recently ruled for a university, overturning a jury verdict. .................................................................. 22

CONCLUSION ................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Arana v. Bd. of Regents of Univ. of Wis. Sys.*,
142 F.4th 992 (7th Cir. 2025) ................................................ 9–10

*Best v. City of Portland*,
554 F.3d 698 (7th Cir. 2009) ...................................................... 17

*C.S. v. Madison Metropolitan School District*,
34 F.4th 536 (7th Cir. 2022) ................................ 11, 19, 20, 21

*Davis v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) ........................................................ 1, *passim*

*Doe v. Bd. of Regents*,
615 F. Supp. 3d 877 (W.D. Wis. 2022) ................................... 8

*Doe v. Bd. of Trs. of the Nebraska State Colleges*,
78 F.4th 419 (8th Cir. 2023) .......................... 15–16, 22–23

*FKFJ, Inc. v. Vill. of Worth*,
11 F.4th 574 (7th Cir. 2021) .......................................... 10–11

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998) .................................................................... 21

*Jauquet v. Green Bay Area Catholic Education, Inc.*,
996 F.3d 802 (7th Cir. 2021) ............................................ 11, 20

*Johnson v. Ne. Sch. Corp.*,
972 F.3d 905 (7th Cir. 2020) .................................................... 20

*K.T. v. Culver-Stockton Coll.*,
865 F.3d 1054 (8th Cir. 2017) ................................................. 12

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
944 F.3d 613 (6th Cir. 2019) ............................................ 12, 14

*Ostrander v. Duggan*,
341 F.3d 745 (8th Cir. 2003) .................................................... 19

iii

*Pahssen v. Merrill Cmty. Sch. Dist.*,
    668 F.3d 356 (6th Cir. 2012) ........................................................ 19

*Reese v. Jefferson School District No. 14J*,
    208 F.3d 736 (9th Cir. 2000) ................................................... 13–14

*Roe v. Marshall Univ. Bd. of Governors*,
    145 F.4th 561 (4th Cir. 2025) ....................................................... 18

*Shank v. Carleton Coll.*,
    993 F.3d 567 (8th Cir. 2021) ........................................................ 16

**Statutes**

20 U.S.C. § 1681(a) ............................................................. 11, 13, 17

**Rules**

Fed. R. Civ. P. 56(a) .................................................................... 11

**Other Authorities**

Is Vulnerability Enough? Analyzing the Jurisdictional Divide on the
    Requirement for Post-Notice Harassment in Title IX Litigation,
    29 Yale J.L. & Feminism 1 (2017) .......................................... 14–15

**INTRODUCTION**

Title IX provides for liability against a school for peer-on-peer harassment "in certain limited circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). The "plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Id.* at 651. While Arana cannot meet this high bar for many reasons, this supplemental brief focuses on the reasoning in the panel's opinion.

Arana fails to meet the elements of a Title IX claim because she cannot show that the University of Wisconsin subjected her to pervasive sexual harassment. Her claim involves one incident of sexual harassment by another student that took place off campus, to which the University promptly responded after being notified. While Arana disagrees with the University's later decision to let the other student back on campus, there were no further incidents of harassment between them. This means that the harassment was not pervasive, nor did the University's response cause a denial of equal access when it did not lead to further incidents.

For similar reasons, Arana cannot show the University acted with deliberate indifference. Courts have held that schools were not deliberately

indifferent when their actions, while not unreasonable, ultimately were unsuccessful in preventing further harassment. Here, the University's response did not lead to further incidents and the only way to find deliberate indifference is to second-guess the University's disciplinary decisions, which courts are not allowed to do.

## STATEMENT OF THE ISSUES

1. Did Arana present evidence of pervasive harassment when there were no further acts of harassment after the University learned of the first incident?

2. Did the University subject Arana to harassment when she did not suffer harassment after it readmitted the student who harassed her?

3. Can Arana sustain a Title IX claim based on an incident of harassment that occurred in an off-campus apartment and not during any University event or program?

4. Could a reasonable jury determine that the University's response was so unreasonable as to amount to deliberate indifference?

## STATEMENT OF THE CASE

This brief contains only facts relevant to the arguments in this supplemental brief.

## I.     Facts

### A.     The University receives a report of sexual assault and takes action.

Isabelle Arana was a freshman at the University of Wisconsin—Madison when her father reported an allegation of sexual misconduct to Kate Dougherty in the Dean of Students Office. (Dkt. 165 ¶ 47; 171 ¶ 8.) The father alleged that a few days earlier, Arana and a friend went to a local bar and then to the apartment of Quintez Cephus, a member of the University's football team. (Dkt. 112-10:141–47; 102-9:1.) The apartment was privately owned and located off the University's campus. (Dkt. 165 ¶ 52; 102-16:2.) Another fellow student and member of the football team, Danny Davis, was also there. (Dkt. 165 ¶¶ 27–28; 102-9:2; 102-5:3; 102-16:2–3.) Arana, her father alleged, had been sexually assaulted by Cephus at the apartment. (Dkt. 165 ¶ 47; 104-3:1–2.)

The University responded immediately. Because Arana does not take issue with this part of the University's response, only a summary of its actions is provided here. Upon Arana's request, the University issued a no-contact order between Arana, Cephus, and Davis, and the University suspended Cephus from the football team. (Dkt. 165 ¶¶ 61–64.) There was one issue with the no

contact order when Davis and Arana were placed in the same music class; the University addressed the issue that day and were able to get Davis to drop the class. (Dkt. 165 ¶¶ 145–46, 149–52.)

The University opened an investigation into the alleged sexual misconduct under its student nonacademic misconduct code. (Dkt. 165 ¶¶ 78–83.) After the Dane County district attorney's office filed criminal charges against Cephus, he refused to be interviewed for the University's investigation and his attorney asked for the investigation to be delayed. (Dkt. 165 ¶ 126.) The University denied that request and, on October 30, 2018, relying on the information available to him at the time, an assistant dean found Cephus responsible for second- and third-degree sexual assault of Arana and for sexually harassing her. (Dkt. 165 ¶¶ 178–79.)

The University's Nonacademic Misconduct Committee then conducted a non-academic misconduct hearing for Cephus, who did not testify due to the pending criminal case. (Dkt. 165 ¶¶ 183, 186.) This was the only time Arana encountered Cephus after the alleged sexual misconduct. Arana says that Cephus walked toward her, perhaps in an aggressive manner, but a University employee reminded Cephus of the no-contact order and told him to walk away if he saw Arana. (Dkt. 165 ¶ 181; 172 ¶ 25.)

Based on the evidence at that time, the Committee issued a written decision, finding that Cephus was not responsible for second-degree sexual

assault, but was responsible for third-degree sexual assault and sexual harassment. (Dkt. 165 ¶¶ 204–06.) The committee recommended that Cephus be expelled. (Dkt. 165 ¶ 207.) Chancellor Rebecca Blank affirmed that decision. (Dkt. 165 ¶ 224.)

**B.** **Cephus is acquitted at his criminal trial, and the University grants his petition for readmission while keeping the no-contact order in place.**

Cephus's criminal trial took place from July 29 through August 2, 2019. (Dkt. 165 ¶ 243.) After deliberating for about half an hour, the jury found him not guilty on all counts. (Dkt. 165 ¶¶ 243, 245.)

On August 6, Cephus filed a petition for readmission under the University's student nonacademic misconduct code. (Dkt. 165 ¶¶ 248–55.) The petition contained evidence that had not been available to the University during the prior disciplinary proceeding, including video footage of Arana, her friend, Cephus, and Davis leaving the bar and arriving at Cephus's apartment. (Dkt. 165 ¶¶ 255–56, 260, 288–94.)

Chancellor Blank worked with the University's legal staff in responding to the petition, reviewed the new evidence, and discussed the petition with the University's Title IX coordinator. (Dkt. 165 ¶¶ 257–58, 276–80, 299–300, 303–04.) On August 19, she concluded that the evidence "f[ell] short of the preponderance of the evidence standard required to find [Cephus] responsible for sexual assault." (Dkt. 165 ¶¶ 295, 304; 112-12:4.) Because the evidence did

show, however, that Cephus had sexually harassed Plaintiff by enlisting Davis to take her picture without consent, Blank kept in place the sexual-harassment finding and maintained the no-contact order. (Dkt. 165 ¶¶ 296–97, 300.)

Blank had received messages from many people, including students, employees, alumni, donors, and members of the public urging her to either grant or deny the petition. (Dkt. 165 ¶ 310.) Ted Kellner, a University donor, urged her to grant the petition. (Dkt. 128-56:2.) Blank knew she would be criticized whichever way she ruled, so she did what she thought was the right thing. (Dkt. 93:78.) Blank had previously granted two petitions for restoration of rights filed by other students, which she decided before the start of the next semester, including one decided in one week. (Dkt. 172 ¶¶ 31–33.)

## C. High-level University staff meet with Arana, who does not see Cephus again.

On September 10, 2019, Chris Cole, the Director of Threat Intervention Services for the University police, and Kipp Cox, the Assistant Dean/Director for the Division of Student Life, met with Arana and two of her attorneys. (Dkt. 115 ¶¶ 2, 10, 13.) Part of Cole's job was to evaluate threats to the University community and develop strategies to mitigate them. (Dkt. 115 ¶ 3.) Cole determined that, while Arana had generalized fears of encountering Cephus or football players in general, there was not a specific, actionable threat that could be acted upon. (Dkt. 115 ¶¶ 15–17.) He informed Arana that if she felt

unsafe, whether because she encountered football players or for any reason, she should call campus police or 911. (Dkt. 115 ¶¶ 18, 23.)

Arana says that "the school seemed unmotivated to enforce the no contact" order at this meeting. (Dkt. 150 ¶ 6.) Cole and Cox "advised" that she "should just avoid [Cephus] when I could and call the police if anything else occurred." (Dkt. 150 ¶ 7.) She said that "she did not feel safe on campus" and "did not feel like my school was supportive of my safety." (Dkt. 150 ¶ 8.) Arana said she would be afraid when she saw male athletes because Cephus might be with them. (Dkt. 150 ¶ 4.) Arana never saw or heard from Cephus during that semester or ever again before graduating. (Dkt. 165 ¶¶ 335–36, 339–40.)

## II.    Procedural history

### A.    The district court grants the University's summary judgment motion.

Both parties filed motions for summary judgment. Arana's motion argued that the University has control over the context of harassment when a "plaintiff suffers on-campus hostile environment following sexual violence by one student against another." (Dkt. 127:22.) She argued the University was "responsible for the 'post-assault school situation' given its control over the students and their educational environment." (Dkt. 127:23.) The University contested that argument because Arana presented no evidence of additional harassment that occurred on campus. (Dkt. 143:41.)

The University's brief in support of its motion noted that, to be liable, the harassment would have to take place in a location where it had substantial control over the harasser and the context in which the harassment occurs. (Dkt. 125:42.) It also argued in a footnote that "[a]n off-campus sexual assault, without evidence of any on-campus harassment, cannot give rise to a Title IX claim." (Dkt. 125:55 n.114.) Arana responded to that argument by contending that the University did have control over the context of the harassment, making the same hostile environment argument previously made in her summary judgment brief. (Dkt. 144:27–28 n.5.) The University countered that argument in its reply. (Dkt. 167:7–8, 12–18.)

The district court ruled that because Arana had "not met her burden to prove adverse educational effects caused by [Cephus]'s reinstatement as required for both direct and indirect discrimination claims under Title IX, her motion for summary judgment must be denied." *Doe v. Bd. of Regents*, 615 F. Supp. 3d 877, 889 (W.D. Wis. 2022). The court then held that "because defendants moved for summary judgment on the same arguments, and neither party successfully raised any genuine disputes of material fact, but rather disputed the proper application of Seventh Circuit case law, defendants' motion for summary judgment will be granted." *Id.*

## B. The panel reverses the district court's judgment.

The panel began by holding that the University had waived any argument that Arana could not bring a claim based on an incident that occurred at an off-campus apartment not controlled by the University. *Arana v. Bd. of Regents of Univ. of Wis. Sys.*, 142 F.4th 992, 1000–01 (7th Cir. 2025), *reh'g en banc granted, opinion vacated*, No. 22-2454 (7th Cir. Sept. 22, 2025). It then held that one incident of sexual harassment can satisfy the requirement that harassment be pervasive. *Id.* at 1001. It joined three other circuits in doing so, reasoning that a plaintiff's "fear and apprehension casts a pervasive shadow across the student's schooling where administrators respond in an unreasonable manner." *Id.* at 1002. The panel also held that there need not be any further harassment after the school learns of an incident because *Davis* defined subjecting a student to harassment as including "to make them liable or vulnerable to it." *Id.* at 1002 (quoting *Davis*, 526 U.S. at 645).

On deliberate indifference, the panel majority said that the decision to readmit Cephus "effectively nullified the initial Title IX investigation." *Id.* at 1005. It held that the University's decision may not have been in good faith because it rushed its decision by deciding within a few weeks due to influential donors asking for that result. *Id.* at 1006. It also thought that "the new evidence the University presents does not undermine its conclusions during the original Title IX investigation as much as the University suggests." *Id.* It

disregarded the no-contact order because "[a] jury could infer a lack of interest in enforcing the order if it accepts Arana's characterization that the administrators simply told her to contact police if she felt unsafe." *Id.* at 1009.

## SUMMARY OF THE ARGUMENT

Arana's claim fails to meet the standard for a Title IX clam for several reasons. As a threshold matter, there could have been no pervasive harassment because there was only one incident, and no harassment after the action Arana challenges. Adding to these problems, the initial incident did not occur in a place the University controlled.

Further, the University's response was not deliberately indifferent. The University readmitted a student who had been acquitted of sexual assault but still found him responsible for sexual harassment and maintained a no-contact order. Courts do not second-guess disciplinary decisions and reweigh the evidence considered by schools. That is why courts have held that similar responses, and even objectively poor responses, did not constitute deliberate indifference as a matter of law.

## STANDARD OF REVIEW

The decision by the district court to grant the University summary judgment is reviewed de novo. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The dispute must be such that, if resolved in the opposing party's favor, a reasonable jury could return a verdict for that party. *FKFJ*, 11 F.4th at 584.

## ARGUMENT

### I. Arana's claim fails because the University did not subject her to harassment that was pervasive.

A Title IX claim based on peer harassment "will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. Further, a school "may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment." *Id.* at 644 (quoting 20 U.S.C. § 1681(a)). This Court has described the governing legal standard as "high bar," a "demanding standard," *Jauquet v. Green Bay Area Catholic Education, Inc.*, 996 F.3d 802, 808–09 (7th Cir. 2021) (citation omitted), and one that is "difficult to meet," *C.S. v. Madison Metropolitan School District*, 34 F.4th 536, 543 (7th Cir. 2022) (en banc). While there are several problems with Arana's claim, a fundamental flaw is that the University did not subject her to pervasive harassment.

### A. There was not pervasive harassment.

When the Supreme Court established the standard for Title IX liability for peer-on-peer harassment in *Davis*, it specifically addressed the issue of

whether "a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect," and concluded that it was "unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." 526 U.S. at 652–53. The Sixth Circuit held that "'[p]ervasive' means 'systemic' or 'widespread,' but for our purposes, it also means multiple incidents of harassment; one incident of harassment is not enough." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 620 (6th Cir. 2019) (quoting *Davis*, 526 U.S. at 652–53). The Eighth Circuit similarly held that one incident "does not plausibly allege pervasive discrimination as required to state a peer harassment claim." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1059 (8th Cir. 2017).

While the panel majority thought *Davis* was not binding on this point, requiring more than one incident is the most reasonable way to implement the requirement that the harassment be "pervasive." *Davis* held that schools could be liable when behavior is "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." 526 U.S. at 652. Title IX liability is therefore limited to when the University's response is so deficient as to have this systemic effect and thus can rise to the level of discrimination on the basis of sex. While *Davis* mentioned the phrase

"make them liable or vulnerable" to harassment, *id.* at 645, this makes sense only as holding that the school's response made the student liable or vulnerable to harassment that then did occur. *Davis* was clear that the harassment must be both severe, pervasive, and objectively offensive to rise to the level of discrimination based on sex. Allowing liability for a response to a single pre-notice incident would write the word "pervasive" out of *Davis*.

Arana mentions further incidents that do not constitute "objectively offensive" harassment, such as Davis being in her class and Cephus walking toward her (allegedly in an aggressive manner) at the disciplinary hearing. However, even if one assumes those actions can be counted as harassment, they do not rise to the level of "pervasive" harassment.

## B. The University's response did not subject Arana to harassment.

Arana takes issue with the way the University responded to the incident between her and Cephus, particularly that Cephus was reinstated to the University. The University, however, did not discriminate based on sex because its response did not subject her to harassment, even if she disagrees with that response.

*Davis* held that a school "may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment." *Id.* at 644 (alteration in original) (quoting 20 U.S.C. § 1681(a)). In *Reese v. Jefferson School District No.*

*14J*, 208 F.3d 736, 740 (9th Cir. 2000), the Ninth Circuit interpreted *Davis* as meaning that the school district there could not be "deemed to have 'subjected' the plaintiffs to the harassment" when there was "no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations." ). The Sixth Circuit recognizes a "requirement that at least one more (*further*) incident of harassment, after the school has actual knowledge and implements a response, is necessary to state a claim." *Kollaritsch*, 944 F.3d at 621. Put another way, the University's allegedly deficient response must have, at a minimum, resulted in further harassment to sustain a Title IX claim. This is the only way in which a school's response can possibly have subjected one of its students to harassment.

While *Davis* mentioned that a school could be liable if it made a student "liable or vulnerable to" harassment, it still required actual future harassment. A school could directly cause a student to undergo harassment, or its inaction could place the student in the position where she did then experience harassment. As one scholar put it, "an institution would 'subject' a student to harassment if its response to the notice of harassment actually placed the student in a position to experience further harassment (causation) or if the institution failed to take action and left the student in a place of vulnerability where further harassment occurred (vulnerability)." Zachary Cormier, Is Vulnerability Enough? Analyzing the Jurisdictional Divide on the

Requirement for Post-Notice Harassment in Title IX Litigation, 29 Yale J.L. & Feminism 1, 23 (2017). The reasoning in *Davis*, both read as a whole and this language in particular, requires actual harassment.

After the initial briefing in this case, the Eighth Circuit, in a case similar to this one, reversed a jury verdict in favor of a Title IX plaintiff due to the lack of further harassment after the school was notified. *See Doe v. Bd. of Trs. of the Nebraska State Colleges*, 78 F.4th 419, 424 (8th Cir. 2023). There, the plaintiff was a student and campus security officer at a university who was sexually assaulted in a dormitory. *Id.* at 421. The plaintiff vaguely discussed an incident with a university counselor but said she did not want to report it. *Id.* The perpetrator taunted the plaintiff for several months and then again sexually assaulted her. *Id.* After this assault, the plaintiff reported the incident to the counselor and started Title IX proceedings at the school. *Id.* The school took action against the perpetrator but did not expel him. Instead, it issued a no-contact order, required weekly counseling sessions, placed him on behavioral probation, directed him to read a book and discuss it with his counselor, and required him to complete an online course on consent and alcohol. *Id.* at 422. The plaintiff "objected to the disciplinary sanctions, believing [the perpetrator] should be removed from campus." *Id.*

The plaintiff brought a Title IX case and won a money judgment at trial, but the Eighth Circuit reversed. In part, the court ruled that no reasonable

jury could find the school acted with deliberate indifference. The court also held that "the evidence falls short on causation": the school could not be liable for the first assault because no appropriate person knew about it, and "once the second assault took place—and the proper administrators were notified—there were no more incidents of harassment or abuse." *Id.* at 424. The court noted that the plaintiff "was understandably distraught by the events, but merely '[l]inking the college's actions or inactions to emotional trauma the plaintiff experienced in the wake of sexual harassment or assault, even if proven, is not enough.'" *Id.* (quoting *Shank v. Carleton Coll.*, 993 F.3d 567, 576 (8th Cir. 2021)). Put another way, the plaintiff "has not shown that [the university] caused a cognizable harm by failing to more severely discipline [the perpetrator]." *Id.*

The same is true here. Neither the University's readmission of Cephus nor its alleged lack of interest in enforcing the no-contact order subjected Arana to harassment (or even contact in violation of the order). Arana did not see Cephus again on campus, let alone be harassed by him. (Dkt. 165 ¶¶ 335, 339–340.) The choice not to discipline Cephus more harshly did not subject her to harassment. While she understandably experienced "emotional trauma . . . in the wake of sexual harassment or assault," *Doe*, 78 F4th at 424 (citation omitted), that is not sufficient to establish that the University subjected her to actionable harassment.

### C. The one incident of harassment did not take place in an environment substantially controlled by the University.

The panel held that this argument was waived, and it is not necessary for this Court to decide on this ground. This Court "may affirm a grant of summary judgment on any alternative basis found in the record as long as that basis was adequately considered by the district court and the nonmoving party had an opportunity to contest it." *Best v. City of Portland*, 554 F.3d 698, 702 (7th Cir. 2009). Here, whether there was harassment that took place in a context under the control of the University was fully briefed by the parties in their cross-motions for summary judgment. Arana did not contend that the off-campus incident with Cephus, alone, was sufficient to sustain a Title IX claim or that the University could have prevented it from happening. Instead, she contended that the University was responsible for the campus environment after Cephus was readmitted. As a result, the argument here is related to the two arguments above: whether there was further harassment after the University learned of the first instance and, if so, whether the harassment was pervasive.

Arana's claim does not meet the requirement in *Davis* that "because the harassment must occur 'under' 'the operations of' a funding recipient, the harassment must take place in a context subject to the school district's control." 526 U.S. at 645 (quoting 20 U.S.C. § § 1681(a), 1687). The court held that the statutory language and structure "combine to limit a recipient's damages

liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* Here, the incident occurred in an off-campus apartment late at night, not in a class or other program controlled by the University. While the University could potentially be liable for harassment that occurred after the first incident, as argued above, there was no such harassment.

The Fourth Circuit recently affirmed summary judgment in favor of a university when a plaintiff's claim was based on an alleged sexual assault at an off-campus apartment. *See Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 567 (4th Cir. 2025). The court noted that "various courts have declined to impose Title IX liability where sexual harassment incidents occurred at locations outside the educational institution's oversight, particularly when the institution lacked notice of prior misconduct." *Id.* at 568. The court affirmed because "the sexual assault by Doe of plaintiff Roe occurred at a private, off-campus residence unconnected to any University-sponsored program, organization, or event." *Id.* Nor did the university have "prior knowledge of the off-campus post-game party, nor did it exercise any supervision or control over the location or those present." *Id.* As a result, the

university could not be held liable.[1] The Fourth Circuit has joined the Sixth and Eighth Circuits on this point. *See Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012); *Ostrander v. Duggan*, 341 F.3d 745, 750–51 (8th Cir. 2003).

## II.   No reasonable jury could find that the University acted with deliberate indifference.

Arana's claim independently fails because the University did not act with deliberate indifference.

### A.   The panel majority's reasoning is inconsistent with Supreme Court and circuit precedent.

The panel's decision is inconsistent with precedent on deliberate indifference from the Supreme Court and this Court. *Davis* was clear that a plaintiff does not "have a Title IX right to make particular remedial demands" and therefore "courts should refrain from second-guessing the disciplinary decisions made by school administrators." 526 U.S. at 648. Further, this Court recognizes that a school's "response does not have to be perfect or even successful." *C.S.*, 34 F.4th 536. Instead, the school's response must be so unreasonable, under all the circumstances, as to constitute an 'official decision' to permit discrimination." *Id.* at 543 (citation omitted). This is a "high bar," a

---

[1] This case shows the interrelationship between the various elements of a Title IX claim. It could also have been decided on the ground that no further harassment occurred after the university was informed of the first incident, like the Eighth Circuit's decision in *Doe*.

"demanding standard," *Jauquet*, 996 F.3d at 808–09 (citation omitted), and one that is "difficult to meet," *C.S.*, 34 F.4th. at 540. Deliberate indifference means, in essence, that "the school 'learned of a problem and did nothing.'" *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 912 (7th Cir. 2020) (citation omitted).

Here, the panel took issue with the University's readmitting Cephus because the decision was allegedly rushed and suspiciously timed to coincide with the start of the football season. However, Cephus filed his motion shortly after he was acquitted by the jury, which makes sense given that this would support readmission. Consistent with her past practice, Chancellor Blank decided the petition before the start of the next semester. (Dkt. 172 ¶¶ 31–33.) The panel found fault with various things, such as not allowing Arana to participate in the reinstatement proceeding, not waiting for a transcript of the criminal trial, and with how Blank weighed the new evidence. This is all "second-guessing the disciplinary decisions made by school administrators," *Davis*, 526 U.S. at 648, and conflicts with this Court's observation that schools "are not required to expel every student accused of sexually harassing another student to avoid Title IX liability." *Johnson*, 972 F.3d at 912.

The panel majority examined motives behind a decision that did not result in further harassment based on speculation that the University might not have dealt appropriately with potential, future harassment. The panel majority cited no authority for the proposition that courts should examine the motives

of school administrators rather than the objective reasonableness of their decisions.

That approach is inconsistent with *C.S.* In that case, a school principal became aware that a school employee had an inappropriate relationship with a student, *C.S.* 34 F.4th at 546. The principal discussed the issue with the employee and told him "to 'limit' the 'hugs and physical contact' with C.S., avoid interacting with her in private settings, and set 'strong boundaries' in his relationship with her." *Id.* This Court held "[t]he record is clear that this response was not so unreasonable as to amount to 'deliberate indifference to discrimination.'" *Id.* at 547 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). The principal's action in *C.S.* arguably led to more harassment given that, following the warning, the employee sexually assaulted the student during the next school year. *Id.* at 545. The school was not liable for these incidents, though, because it did not have knowledge of them, and "Title IX does not permit institutional liability based solely on knowledge of the risk of future misconduct." *Id.* at 540.

Here, in contrast, the panel majority held that the University could be liable when it did not even know there was a risk of future violations of the no-contact order, and those purported risks never materialized, merely based on allegedly bad motives for imposing the discipline chosen.

The panel based its holding on speculation that the University would not enforce the no-contact order, despite the University previously enforcing the order. Arana presented no evidence that Cephus was threatening to violate the no-contact order, only that he might in the future, and she perceived the University as not being interested in enforcing the order. This perception came from a meeting with University officials who, when discussing what to do if she encountered Cephus, advised her to call 9-1-1 or avoid him. This advice on what to do if she encountered Cephus around campus does not show an intent not to enforce the order, which, by its nature, can be enforced only after someone violates it. Of course, this is all speculative because there was no violation of the order.

### B. On similar facts, the Eighth Circuit recently ruled for a university, overturning a jury verdict.

The Eighth Circuit's decision in *Doe* is almost precisely on point with this case. In that case, the plaintiff took issue with Chadron University's decision to impose discipline but not remove the harasser from campus. *Doe*, 78 F.4th at 422. The Eighth Circuit held that the jury could not reasonably have found the university's response to be deliberately indifferent. *Id.* at 423–24. The university "acted promptly—nearly immediately—upon learning of the assault." *Id.* at 424. Like the University here, "Chadron issued a mutually binding no-contact order . . . and promptly initiated an investigation to

determine what happened." *Id.* The university "interviewed Doe, explained the investigatory process to her," banned the harasser from Doe's dormitory, and offered her academic and other accommodations. *Id.* It also imposed discipline on the harasser. *Id.* "These uncontroverted steps were prompt, extensive, substantive, directed to protect and assist Doe, and not clearly unreasonable given the circumstances known to Chadron." *Id.* Importantly, the court noted "[i]t is understandable that Doe wanted [the harasser] removed from campus, or [to] suffer more severe consequences, however, a cognizable claim requires Doe to show Chadron acted in a clearly unreasonable manner, which is not sustainable on the record." *Id.*

The same is true here. The University promptly investigated, offered accommodations to Arana, and imposed discipline on Cephus. While Arana thinks the discipline should have been harsher, her claim requires that the University acted in a clearly unreasonable manner. Readmitting Cephus after his acquittal, while maintaining a no-contact order, does not rise to the level of deliberate indifference.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Dated this 25th day of November 2025.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Brian P. Keenan
BRIAN P. KEENAN
Assistant Attorney General
State Bar #1056525

Attorneys for Defendant-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
(608) 294-2907 (Fax)
brian.keenan@wisdoj.gov

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 5300 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13 point Century Schoolbook.

Dated this 25th day of November 2025.

s/ Brian P. Keenan
BRIAN P. KEENAN
Assistant Attorney General


## CERTIFICATE OF SERVICE

I certify that on November 25, 2025, I electronically filed the foregoing Supplemental Brief of Defendant-Appellee with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 25th day of November 2025.

s/ Brian P. Keenan
BRIAN P. KEENAN
Assistant Attorney General