No. 22-2454

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

ISABELLE ARANA,
*Plaintiff-Appellant,*

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 3:20-cv-856
The Honorable William M. Conley

## SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLANT
## ISABELLE ARANA

John Clune
Christopher Ford
Lucy Walker
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
clune@hbcboulder.com
ford@hbcboulder.com
walker@hbcboulder.com

Alexandra Z. Brodsky
Adele P. Kimmel
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net
akimmel@publicjustice.net

Counsel for Plaintiff-Appellant
*Additional Counsel on Inside Cover*

Robert Theine Pledl

DAVIS & PLEDL S.C.

1433 N. Water Street, Suite 400

Milwaukee, WI 53202

(414) 488-1354

rtp@davisandpledl.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Alexandra Z. Brodsky    Date: August 28, 2025

Attorney's Printed Name: Alexandra Z. Brodsky

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓    No ☐

Address: 1620 L Street NW, Suite 630

Washington, DC 20036

Phone Number: 202-797-8600    Fax Number:

E-Mail Address: abrodsky@publicjustice.net

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ John Clune      Date: August 28, 2025

Attorney's Printed Name: John Clune

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: 921 Walnut Street, Suite 200

Boulder, Colorado 80302

Phone Number: 303-442-6514      Fax Number:

E-Mail Address: john.clune@hbcboulder.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ Christopher Ford    Date: August 28, 2025

Attorney's Printed Name: Christopher Ford

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: 921 Walnut Street, Suite 200

Boulder, Colorado 80302

Phone Number: 303-442-6514    Fax Number:

E-Mail Address: chris.ford@hbcboulder.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Adele P. Kimmel    Date: August 28, 2025

Attorney's Printed Name: Adele P. Kimmel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1620 L Street NW, Suite 630

Washington, DC 20036

Phone Number: 202-797-8600    Fax Number:

E-Mail Address: akimmel@publicjustice.net

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ Robert Theine Pledl    Date: August 28, 2025

Attorney's Printed Name: Robert Theine Pledl

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: 1661 N. Water Street - Suite 410

Milwaukee, WI 53202

Phone Number: 414-667-0390    Fax Number:

E-Mail Address: rtp@davisandpledl.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2454

Short Caption: Arana v. Board of Regents of the University of Wisconsin System

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Isabelle Arana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Public Justice; Hutchinson Black and Cook, LLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/ Lucy Walker    Date: August 28, 2025

Attorney's Printed Name: Lucy Walker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 921 Walnut Street, Suite 200

Boulder, Colorado 80302

Phone Number: 303-442-6514    Fax Number:

E-Mail Address: lucy.walker@hbcboulder.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................... 1

ARGUMENT .......................................................................................... 2

I.    A jury could find the University's response to the sexual harassment was deliberately indifferent ......................................... 2

II.   A jury could find the harassment was sufficiently serious to deprive Isabelle of educational opportunities and benefits .......... 11

     A.    Isabelle was deprived of educational opportunities and benefits ........................................................................... 11

     B.    Isabelle was subjected to severe and pervasive harassment .................................................................... 12

III.  The University forfeited its argument that it lacked control over the context of the harassment, and is wrong anyway ........... 17

     A.    The University did not preserve this argument .................... 17

     B.    A jury could find the University exercised control over the context of the harassment ............................... 21

          1.    A jury could find the University exercised control over the post-assault hostile environment ................. 22

          2.    A jury could find the University exercised control over the context of the sexual assaults ........................ 23

IV.  Title IX liability does not always require post-notice harassment ..................................................................... 28

CONCLUSION ..................................................................................... 34

CERTIFICATE OF COMPLIANCE ....................................................... 36

i

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*A.P. v. Fayette Cnty. Sch. Dist.*,
   No. 21-12562, 2023 WL 4174070 (11th Cir. June 26, 2023) .............. 33

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................ 5

*Arana v. Bd. of Regents of Univ. of Wis. Sys.*,
   142 F.4th 992 (7th Cir. 2025) ...................................................... *passim*

*Ark. Game & Fish Comm'n v. United States*,
   568 U.S. 23 (2012) ........................................................................ 16

*Bakalis v. Golembeski*,
   35 F.3d 318 (7th Cir. 1994) .......................................................... 18

*Brown v. Arizona*,
   82 F.4th 863 (9th Cir. 2023) ...................................................... *passim*

*C.S. v. Madison Metropolitan Sch. Dist.*,
   34 F.4th 536 (7th Cir. 2022) ........................................................ 10

*Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt.
   of Mich., Inc.*,
   674 F.3d 630 (7th Cir. 2012) ........................................................ 18

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) ...................................................................... 16

*Costello v. Grundon*,
   651 F.3d 614 (7th Cir. 2011) .................................................... 19, 20

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999) .................................................................. *passim*

*Doe 12 v. Baylor Univ.*,
   336 F.Supp.3d 763 (W.D. Tex. 2018) ............................................ 8

*Doe v. Fairfax Cnty. Sch. Bd.*,
    1 F.4th 257 (4th Cir. 2021) .................................. 6, 13, 14, 22

*Doe v. Morehouse Coll., Inc.*,
    622 F.Supp.3d 1279 (N.D. Ga. 2022) .................................. 23

*Doe v. Purdue Univ.*,
    928 F.3d 652 (7th Cir. 2019) .................................. 7

*Doe v. Univ. of Denv.*,
    1 F.4th 822 (10th Cir. 2021) .................................. 7

*Doe v. Yeshiva Univ.*,
    703 F.Supp.3d 473 (S.D.N.Y. 2023) .................................. 8

*Ellison v. Brady*,
    924 F.2d 872 (9th Cir. 1991) .................................. 13

*Farmer v. Kan. State Univ.*,
    918 F.3d 1094 (10th Cir. 2019) .................................. 29, 30

*Ferris v. Delta Air Lines, Inc.*,
    277 F.3d 128 (2d Cir. 2001) .................................. 13

*Fitzgerald v. Barnstable Sch. Comm.*,
    504 F.3d 165 (1st Cir. 2007) .................................. 13

*Giambalvo v. Suffolk Cnty.*,
    155 F.4th 163 (2d Cir. 2025) .................................. 21

*Hall v. Millersville Univ.*,
    22 F.4th 397 (3d Cir. 2022) .................................. 29

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) .................................. 29

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
    119 F.3d 1070 (3d Cir. 1997) .................................. 21

*Johnson v. Ne. Sch. Corp.*,
    972 F.3d 905 (7th Cir. 2020) .................................. 9, 10

*Johnson v. Prentice,*
   29 F.4th 895 (7th Cir. 2022) ................................................................ 18

*K.T. v. Culver-Stockton Coll.,*
   865 F.3d 1054 (8th Cir. 2017) ............................................................. 34

*Kollaritsch v. Mich. State Univ. Bd. of Trs.,*
   944 F.3d 613 (6th Cir. 2019) ........................................................ 14, 33

*L.E. v. Lakeland Joint Sch. Dist. #272,*
   403 F.Supp.3d 888 (D. Idaho 2019) .................................................... 23

*Lapka v. Chertoff,*
   517 F.3d 974 (7th Cir. 2008) ............................................................... 13

*Moriarty ex rel. Loc. Union No. 727 v. Svec,*
   429 F.3d 710 (7th Cir. 2005) ............................................................... 18

*Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy,*
   594 U.S. 180 (2021) ............................................................................. 26

*N. Haven Bd. of Educ. v. Bell,*
   456 U.S. 512 (1982) ............................................................................. 14

*New Doe Child #1 v. United States,*
   901 F.3d 1015 (8th Cir. 2018) ............................................................. 16

*Oden v. N. Marianas Coll.,*
   440 F.3d 1085 (9th Cir. 2006) ....................................................... 25, 26

*Ollier v. Sweetwater Union High Sch. Dist.,*
   768 F.3d 843 (9th Cir. 2014) ................................................................. 7

*Owens v. La. State Univ.,*
   No. CV 21-242, 2023 WL 8880380
   (M.D. La. Dec. 22, 2023) ..................................................................... 24

*Pabon v. Wright,*
   459 F.3d 241 (2d Cir. 2006) ................................................................. 32

*Petties v. Carter,*
   836 F.3d 722 (7th Cir. 2016) ................................................................. 7

iv

*Radentz v. Marion Cnty.*,
   640 F.3d 754 (7th Cir. 2011)...................................................6

*Reese v. Jefferson Sch. Dist. No. 14J*,
   208 F.3d 736 (9th Cir. 2000)................................................33

*Rex v. W. Va. Sch. of Osteopathic Med.*,
   119 F.Supp.3d 542 (S.D.W. Va. 2015).................................8

*Roe v. Marshall Univ. Bd. of Governors*,
   145 F.4th 561 (4th Cir. 2025) ...........................................26

*Ross v. Univ. of Tulsa*,
   859 F.3d 1280 (10th Cir. 2017)..........................................26

*Singh v. Uber Techs. Inc.*,
   939 F.3d 210 (3d Cir. 2019) ..............................................16

*Smith v. United States*,
   360 U.S. 1 (1959)................................................................32

*Soule v. Conn. Ass'n of Sch., Inc.*,
   90 F.4th 34 (2d Cir. 2023)..................................................34

*Sweet v. Town of Bargersville*,
   18 F.4th 273 (7th Cir. 2021) ................................................7

*To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift*
   *Am., Inc.*,
   152 F.3d 658 (7th Cir. 1998)..............................................18

*Todd v. Societe Bic, S.A.*,
   21 F.3d 1402 (7th Cir. 1994)..............................................16

*United States v. Howard*,
   67 F.4th 876 (7th Cir. 2023) ..............................................18

*United States v. Montero-Camargo*,
   208 F.3d 1122 (9th Cir. 2000)............................................16

*Wexler v. White's Fine Furniture, Inc.*,
   317 F.3d 564 (6th Cir. 2003)................................................6

*Wilder v. Apfel,*
  153 F.3d 799 (7th Cir. 1998) ............................................. 16

*Williams v. Bd. of Regents of Univ. Sys. of Ga.,*
  477 F.3d 1282 (11th Cir. 2007) .................................... 12, 13

**Statutes and Regulations**

20 U.S.C. § 1681(a) .......................................................... *passim*

20 U.S.C. § 1687 ..................................................................... 24

34 C.F.R. § 106.44 .................................................................... 9

34 C.F.R. § 106.45 .................................................................... 9

Nondiscrimination on the Basis of Sex in Education
  Programs or Activities Receiving Federal Financial
  Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) ............ 8, 10

**Other Authorities**

*Act*, Black's Law Dictionary (12th ed. 2024) ........................... 32

Brief for the United States as Amicus Curiae, *Brown v.
  Arizona*, 82 F.4th 863 (9th Cir. 2023), No. 20-15568,
  https://www.justice.gov/jmd/media/1236731/dl ................. 28

*Make*, Black's Law Dictionary (12th ed. 2024) ................. 31, 32

Pierre N. Leval, *Judging Under the Constitution: Dicta
  About Dicta*, 81 N.Y.U. L. Rev. 1249 (2006) ...................... 16

*Recent Case,* Kollaritsch v. Michigan State University Board
  of Trustees*, 944 F.3d 613 (6th Cir. 2019),* 133 Harv. L.
  Rev. 2611 (2020) ................................................................ 30

Restatement (Second) of Torts § 9 (Am. L. Inst. 1965) ........... 32

Statement of Interest of the United States, *Farmer v. Kan. State Univ.*, No. 2:16-cv-02256 (D. Kan. July 1, 2016), https://www.justice.gov/crt/case-document/file/906097/download ................................................. 23

*Vulnerable*, Webster's Third New International Dictionary (1993) .......................................................................... 29

# INTRODUCTION

This Court got it right the first time. A jury could find that, in prioritizing its football program over truth, safety, and equality, the Board of Regents of the University of Wisconsin was deliberately indifferent to the actionable sexual harassment Isabelle Arana experienced. And a jury could find that, as a result of that deliberate indifference, Isabelle was "excluded from participation in" and "denied the benefits of" the University's offerings, 20 U.S.C. § 1681(a): She changed her course of study, avoided University facilities and activities where her assailant might be present, and otherwise withdrew from campus life. So, a jury should have the chance to decide whether the University is liable to Isabelle under Title IX of the Education Amendments of 1972.

The University's and panel dissent's arguments to the contrary would decimate Title IX's sexual harassment protections. If they were right, Title IX would require a school to do no more than tell a harasser to stay away from his victim—no matter how serious the misconduct, and even if he failed to heed that warning. A school could ignore a student raped by a classmate if she had been raped "only" once. A school would similarly have no obligation to act if a student were assaulted by a

classmate steps from campus and lived in fear of seeing her rapist at school every day. And a school could not be liable if, because of its failures, a student victim kept herself safe by sacrificing her education. For good reason, that's not the law.

## ARGUMENT

### I. A jury could find the University's response to the sexual harassment was deliberately indifferent

1. To date, four judges have ruled on Isabelle's case. Three of those recognized that the record gives rise to an inference that the University "sacrificed [her] interest in an educational environment free from discrimination on the altar of the football plan," and thus was deliberately indifferent. *Arana v. Bd. of Regents of Univ. of Wis. Sys.*, 142 F.4th 992, 1007 (7th Cir. 2025), *reh'g en banc granted, opinion vacated,* No. 22-2454, 2025 WL 2726022 (7th Cir. Sept. 22, 2025) [hereinafter "Majority"]; *see* A.13 (district court holding). That's a good sign a jury could draw the same inference.

Significant evidence, viewed in Isabelle's favor, creates a dispute of fact as to whether the University's response was clearly unreasonable. *See* OpeningBr.40-45; ReplyBr. 8-17. The University concluded, after a lengthy investigation and live hearing, that Cephus had sexually

assaulted Isabelle and created a hostile environment for her. OpeningBr.10-12. The University twice reaffirmed that decision on appeal with reasoned explanations. *Id.* at 12; R.107-2 at 1-20; R.113-7 at 1-16. Between receipt of the complaint and disposition of the second appeal, the University's careful deliberations took thirteen months. OpeningBr.10-12

Yet when the University came under pressure from football fans and high-profile donors following Cephus's criminal acquittal, it quickly scrapped its findings and readmitted Cephus. OpeningBr.15-19. The University's one-sided and truncated reversal process contrasted sharply with its previous decision-making. *See id.* at 13-15, 18-19, 40-43. The school wholly excluded Isabelle from its "re-investigation" while taking repeated meetings with lawyers for her assailant. *Id.* at 14-15. And the University took only thirteen days to readmit him. *Id.* at 18-19. By its own account, the school declined to review key evidence because it was in a rush to announce its decision before the football season. *Id.* at 17-18. Though the University claimed its readmission decision was based on new evidence, it couldn't identify any until a post-deposition declaration, and that evidence supported Isabelle's account. *Id.* at 19, 42-43.

Then, when Isabelle returned to school, the University failed to take simple, available steps to keep Cephus away from her. OpeningBr.44-45. Cephus had already violated the University's order to stay away from Isabelle, and the school had found his presence created a hostile environment for her. *Id.* The University had at its disposal an established repertoire of safety interventions, such as arranging the two students' schedules to ensure they "would not have classes in an area that they were likely to interact." R.116 ¶ 20. Yet the school refused Isabelle's requests for help, leaving her with only the ineffective no-contact order. OpeningBr.44-45.

In its briefing, the University has never denied that a jury could conclude it reversed its initial decision to appease donors and fans, and so has forfeited any such argument. The record is full of evidence supporting that inference.

For example, the Vice President for University Relations charged with the University's "communication strategy" regarding Cephus was one of the Chancellor's two primary advisors guiding her decision to readmit Cephus. OpeningBr.18. The Chancellor consulted him to the exclusion of anyone who had worked on the University's investigation into

the allegations, including the University's Title IX coordinator. *See id.* Plus, direct evidence shows that, although the University claimed it readmitted Cephus based on information that arose at trial, it declined to review the trial transcript—the best source for that information and its context—because its delivery would take too long given "the timing of the football season" and "publicity." *Id.* at 17-18 (first quoting R.94 at 243:13-244:19; then quoting R.96 at 70:8-13). From this evidence of the school's priorities, the uncharacteristically rushed and one-sided readmission process, and the unreasonableness of the University's purported justification, a jury could infer that the University's readmission decision was motivated by football and public perception rather than factual findings. *Id.* at 40-43; ReplyBr.10-12.

2. The panel dissent didn't find the University's rush to reverse "suspicious" because the Chancellor testified that her motives were pure. *Arana*, 142 F.4th at 1018 (Kirsch, J., dissenting) [hereinafter "Dissent"]. But, at summary judgment, the record must be viewed in Isabelle's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Contemporaneous evidence reflects that the University wanted to come to a decision before the football season started—as donors and the public

demanded—and the Chancellor admitted that she rushed due to "publicity." OpeningBr.17-18. A jury might credit that evidence over the Chancellor's post hoc, self-serving testimony offering an alternative story. *See* R.94 at 243:13-244:19.

3. A school will not be deliberately indifferent just because its investigation reaches the wrong result. *See* Majority at 1007; Dissent at 1018. But that doesn't mean that a court cannot probe a school's given reasons for its decision. *See, e.g., Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 271-73 (4th Cir. 2021) (discussing school's unreasonable decision-making as evidence of deliberate indifference).

This Court and others have recognized that the unreasonableness of an employer's justification for adverse treatment may be evidence that the justification is pretext. *See, e.g., Radentz v. Marion Cnty.*, 640 F.3d 754, 757 (7th Cir. 2011) (citing Seventh Circuit cases); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576-77 (6th Cir. 2003) (collecting Supreme Court and appeals courts' cases). If a justification doesn't make sense, a jury might conclude it didn't actually motivate the employer. Similarly, "[a]n employer's shifting explanations for taking an adverse employment action may be evidence that its proffered reason

is pretextual." *Sweet v. Town of Bargersville*, 18 F.4th 273, 280 (7th Cir. 2021). The same reasoning applies equally to education cases like this one. *See, e.g.*, *Doe v. Univ. of Denv.*, 1 F.4th 822, 829 (10th Cir. 2021); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 869-70 (9th Cir. 2014); *see also Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019) (identifying school administrator's "perplexing" justification for discipline as evidence supporting inference of discrimination); *cf. Petties v. Carter*, 836 F.3d 722, 729-31 (7th Cir. 2016) (en banc) (describing similar rule for deliberate indifference cases regarding prison medical treatment, despite general deference to doctors' professional judgment).

Here, a jury could find that the unreasonableness of the University's explanation of its readmission decision, and the evolution of that explanation over time, is evidence that it is pretext to obscure the University's real motivations: football and public perception. *See* OpeningBr.41-43; ReplyBr.10-12. A jury could find that prioritizing those institutional interests over Isabelle's education was clearly unreasonable.

3. The panel dissent asserts that "[e]ven if the University's readmission decision was made in bad faith," its "overall response" was not "deliberate[ly] indifferen[t]." Dissent at 1019. The crux of the dissent's

reasoning is that the University ordered Cephus not to contact Isabelle after he raped her. *See id.* at 1019-20. But a jury could find that minimalist response was clearly unreasonable, especially given the gravity of the violence and Cephus's prior violation of "the no-contact order at the very time and place one would expect him to be on his best behavior": while waiting for his disciplinary hearing to start. Majority at 1009; *see also, e.g.*, *Brown v. Arizona*, 82 F.4th 863, 866-67 (9th Cir. 2023) (holding a jury could find a school's harassment response, which included a no-contact order, was deliberately indifferent), *cert. denied*, 144 S.Ct. 1346 (2024); *Doe v. Yeshiva Univ.*, 703 F.Supp.3d 473, 486, 493-95 (S.D.N.Y. 2023) (same); *Doe 12 v. Baylor Univ.,* 336 F.Supp.3d 763, 770, 788 (W.D. Tex. 2018) (same); *Rex v. W. Va. Sch. of Osteopathic Med.*, 119 F.Supp.3d 542, 547, 551 (S.D.W. Va. 2015) (same).

The dissent notes that, in two cases, this Court has held that similarly light-touch responses were sufficient. But there's no one-size-fits-all model for responding to sexual harassment, and different facts call for different responses. *E.g.*, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026, 30,034 (May 19, 2020) (explaining, in context of Title

IX's "deliberate indifference standard," that appropriate "respon[ses] to sexual harassment" are "inherently … fact-specific"). Comparing the dissent's cited cases to Isabelle's illustrates this point.

In *Johnson v. Northeast School Corporation*, this Court held that a no-contact order was enough after finding the harassment might not be so serious as to be actionable. 972 F.3d 905, 911-12 (7th Cir. 2020). That alone could justify a more minimalist response. Plus, the two victims refused to sit for interviews or otherwise cooperate with the school's investigation. *See id.* at 908, 912-13. With only "unsubstantiated allegations," the school could not fairly have done much more than "issue[] a no-contact order." *Id.* at 912-13. By contrast, Isabelle participated in the University's investigation and hearing process and the University concluded that Cephus had sexually assaulted and otherwise harassed her. OpeningBr.10-12. So, a jury could find it was clearly unreasonable for the University to offer only the same remedy as the school in *Johnson*.[1]

─────────────────────

[1] *Johnson* illustrates another problem with the position that a no-contact order is always enough. The touchstone of a proper school response to reported sexual harassment is an investigation. *See, e.g., Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 654 (1999); 34 C.F.R. §§ 106.44, 106.45. But, as *Johnson* demonstrates and federal regulations confirm, a no-contact order doesn't require any fact-finding. *See*

Isabelle has explained why *C.S. v. Madison Metropolitan School District*, 34 F.4th 536 (7th Cir. 2022) (en banc), is distinguishable. *See* Resp. to Pet. Reh'g En Banc at 6-8. The misconduct known to the school in *C.S.* was significantly less serious than that Isabelle reported. *See id.* Moreover, in *C.S.*, this Court found that the school's modest response—instructing a teacher to enforce "strong boundaries" with a student—was sufficient because the school had no reason to think the teacher would disobey that directive. 34 F.4th at 547. By contrast, the University had a concrete reason to believe Cephus might not respect the no-contact order: He had violated it before, and at a time when it was uniquely risky for him to do so. *See* Majority at 1009.

The dissent discounts this past violation (at 1019-20). But there's no reason that Cephus's pre-expulsion conduct could not indicate he might behave the same post-expulsion. The University's mild response to the violation—merely "remind[ing] Cephus of the no-contact order," Majority at 995; *accord* Dissent at 1012—does not wipe the slate clean. *Cf. Davis*, 526 U.S. at 635, 654 (noting school could be liable for deliberate

---

*Johnson*, 972 F.3d at 908; 85 Fed. Reg. at 30,184. If a no-contact order was always a sufficient remedy, schools would never need to investigate.

indifference despite warnings to harasser). If anything, it may have emboldened Cephus by showing he could violate the no-contact order with impunity. *See* ReplyBr.14.[2]

## II. A jury could find the harassment was sufficiently serious to deprive Isabelle of educational opportunities and benefits

Under *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, a school can be liable for its deliberate indifference to known sexual harassment if that harassment is "so severe, pervasive, and objectively offensive that it … depriv[s] the victims of access to the educational opportunities or benefits provided by the school." 526 U.S. at 650. A jury could find the harassment in this case meets that standard.

### A. Isabelle was deprived of educational opportunities and benefits

As a result of the harassment, Isabelle left her freshman year early; changed her course of study; "skipped classes, did not use the student union or communal study spaces, and stayed away from certain parts of campus"; "reduced her attendance at sorority events, choosing to return

---

[2] On this point, the dissent cites *Davis*'s requirement that a school have actual knowledge of sexual harassment. But the University has never disputed that it received such notice. And even if this Court extended *Davis* to also require actual knowledge that Cephus had violated the no-contact order, the University had that, too. *See* OpeningBr.11.

[home] many weekends rather than socialize"; and graduated later than planned. Majority at 1003-04. This Court, and others, have recognized that these kinds of educational injuries suffice. *Id.* (citing cases); OpeningBr.27-35 (same).

## B. Isabelle was subjected to severe and pervasive harassment

The harassment Isabelle experienced was sufficiently serious to satisfy *Davis*. *First*, Isabelle was subjected to severe and pervasive harassment when she was repeatedly sexually assaulted and nonconsensually photographed, at her assailant's urging, by his teammate. ReplyBr.2. That "continuous series of events" is analogous to that in an Eleventh Circuit case in which a plaintiff who was repeatedly sexually assaulted "in one room over two hours" met *Davis*'s "severe and pervasive" requirement. *Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 477 F.3d 1282, 1297-98 (11th Cir. 2007); *see* Majority at 1001 n.6.

*Second*, Isabelle was subjected to a hostile environment after the assaults due to Cephus's continued presence on campus. *See* OpeningBr.35-40; ReplyBr.2-3. Indeed, the University itself found that Cephus's presence created a "hostile learning environment" for Isabelle after the assaults. S.A.20, 28-29. That conclusion is consistent with

precedent that "[t]he continued presence of a rapist in the victim's workplace can render the workplace objectively hostile." *Lapka v. Chertoff*, 517 F.3d 974, 984 (7th Cir. 2008); *see Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 137 (2d Cir. 2001); *Ellison v. Brady*, 924 F.2d 872, 883 (9th Cir. 1991).

*Third*, even if this Court looked only to the night of the assaults, and even if the Court treated those assaults (and the nonconsensual photography) as a single incident, that violence could still suffice. *See* Majority at 1001. Federal appeals courts recognize that a single assault may satisfy *Davis*'s standard for actionable harassment "if that incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a scholastic program or activity." *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172-73 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009); *see Fairfax*, 1 F.4th at 274; *Williams*, 477 F.3d at 1297-98.[3]

---

[3] The Eighth Circuit has not ruled that a single assault cannot satisfy *Davis*. *See* Resp. to Pet. Reh'g En Banc at 14-15. And, by breaking *Davis*'s holding up word-by-word, the Sixth Circuit's decision "parse[s *Davis*] as though [it] were dealing with the language of a statute," without "a careful eye to context." Dissent at 1020 (first quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979); then quoting *Nat'l Pork Producers Council v.*

That interpretation of *Davis* aligns with Title IX's text because a single sexual assault can "exclude[]" a student or "den[y]" him the school's "benefits." 20 U.S.C. § 1681(a); *see N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (explaining courts must "accord" Title IX "a sweep as broad as its language"). *Davis*'s standard for actionable discrimination arises from that portion of the statute's text. *See* 526 U.S. at 650. The Supreme Court noted that Title IX "specifically shielded [students] from being 'excluded from participation in' or 'denied the benefits of' any 'education program or activity.'" *Id.* (quoting 20 U.S.C. § 1681(a)). Those two prohibitions "make[] clear that … students must not be denied access to educational opportunities on the basis of gender." *Id.* So, the Court reasoned, actionable harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.*

A single sexual assault can have that effect, especially when compounded by the blow of a school's deliberate indifference. *See, e.g.*, *Fairfax*, 1 F.4th at 274; *supra* Part II.A. And although *Davis* didn't concern a

_____

*Ross*, 598 U.S. 356, 374 (2023)); *see Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 620 (6th Cir. 2019).

single assault, it acknowledged that "in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have" the requisite effect. 526 U.S. at 653.[4]

To be fair, *Davis* could be clearer. Its acknowledgment that a single assault could suffice comes in a passage that reads:

> [T]he provision that the discrimination occur "under any education program or activity" suggests that the behavior be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity. Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.

*Id.* at 652-53.

The University and panel dissent read that second sentence as the Court categorically foreclosing liability in cases stemming from one assault because, although the statutory text permits such liability, and

---

[4] *Davis* didn't concern a rape, but instead a pattern of comments, attempted touching, and an incident in which the young harasser "rubbed his body against [the victim]" in "a sexually suggestive manner." 526 U.S. at 633-43. That's terrible. But any one of those incidents, in isolation, may not have been independently actionable—unlike the harassment at issue in this case.

although *Davis* didn't present that question, the Court assumed Congress would not have intended to permit it. But the better reading is as guidance that a single incident will rarely constitute actionable harassment. Only that interpretation accords with Title IX's text. *Supra* p. 14; *see Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) ("The text of a law controls over purported legislative intentions unmoored from any statutory text; the Court may not replace the actual text with speculation as to Congress' intent." (citation modified)).

That interpretation also gives the sentence about single incidents proper weight. It's dicta, since *Davis* didn't present that issue. *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998); *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1411 (7th Cir. 1994) (en banc). Supreme Court dicta "may be respected, but ought not to control the judgment in a subsequent suit." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012) (quoting *Cohens v. Virginia,* 19 U.S. 264, 399 (1821)); *accord Singh v. Uber Techs. Inc.*, 939 F.3d 210, 223 (3d Cir. 2019); *New Doe Child #1 v. United States*, 901 F.3d 1015, 1019 n.4 (8th Cir. 2018); *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000); Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev.

1249, 1274-75 (2006). So, the best read of the *Davis* passage is as guidance, not a binding holding.

Lastly, the dissent characterizes *Davis* as "decid[ing] that foreclosing liability for 'claims of official indifference to a single instance of one-on-one peer harassment' would best 'reconcile the general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior.'" Dissent at 1016 (quoting *Davis*, 526 U.S. at 652-53). But *Davis* said, instead, that "limiting private damages actions to cases *having a systemic effect on educational programs or activities*" would achieve that effect. 526 U.S. at 653 (emphasis added). And a single rape may have such a systemic effect. *See supra* pp. 13-15.

## III. The University forfeited its argument that it lacked control over the context of the harassment, and is wrong anyway

### A. The University did not preserve this argument

1. The University argues that it was entitled to summary judgment on the alternative basis that it lacked substantial control over the "context" of the assaults. But, as the panel majority correctly determined, the University forfeited that argument by failing to press and develop it in its opening brief below. Majority at 1000. In moving for summary

judgment at the district court, the University only mentioned this issue in a single sentence in footnote 114. *See* R.125 at 55 n.114. There, it conclusorily asserted that "[a]n off-campus sexual assault, without evidence of any on-campus harassment, cannot give rise to a Title IX claim." *Id.* Naturally, the district court didn't address the question.

The law could not be clearer that the University failed to preserve this argument. ReplyBr.19-21. An "argument … made only in a footnote in [an] opening brief and … not developed fully until the reply," as here, is "waived." *Bakalis v. Golembeski*, 35 F.3d 318, 326 n.8 (7th Cir. 1994).

For decades, this Court has held that a "footnote does not preserve an issue for review." *Moriarty ex rel. Loc. Union No. 727 v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005); *see, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 636 n.2 (7th Cir. 2012); *Bakalis*, 35 F.3d at 326 n.8; *United States v. Howard*, 67 F.4th 876, 880 n.2 (7th Cir. 2023); *To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 663 (7th Cir. 1998).

Relatedly, "a conclusory argument" at the district court "that amounts to little more than an assertion does not preserve a question for [this Court's] review." *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir.

2022) (quoting *Soo Line R.R. Co. v. Consol. Rail Corp.*, 965 F.3d 596, 601 (7th Cir. 2020)). The University's buried reference to the off-campus question was insufficient to preserve the issue for that reason, too: It asserted in a single sentence that an off-campus sexual assault cannot give rise to Title IX liability without reasoning or engagement with the record. *See* R.125 at 55 n.114. The University finally pressed the argument in its reply brief below, but that was too late. Majority at 1000; ReplyBr.18-20.

This Court has explained that it's particularly inappropriate to reach a forfeited argument in the summary judgment context. *See* ReplyBr.20-21. If a movant doesn't properly raise a ground for summary judgment in its opening brief, the non-movant has no obligation to develop the record on that issue. *Costello v. Grundon,* 651 F.3d 614, 635-37 (7th Cir. 2011). So, it would be unfair to the non-movant for a court to then reach that issue on appeal. *Id.*

That's the situation here. Because the University didn't move for summary judgment based on the off-campus question, Isabelle had no reason or obligation to oppose its motion on that basis and develop the record accordingly. If this Court were to reach the issue now, it would be constrained to a limited and one-sided record due to the University's

failure, not Isabelle's. That would be especially unjust given the fact-intensive nature of the forfeited issue. ReplyBr.21 (citing authorities); *see Brown*, 82 F.4th at 876 (noting courts "[e]ngag[e] in fact-specific inquiries" when assessing control over off-campus contexts).

3. The panel dissent would have reached the off-campus issue. *See* Dissent at 1015. It didn't acknowledge, however, the wall of authority that a party doesn't preserve an argument by raising it only in a footnote in an opening brief. *See supra* p. 18; ReplyBr.19.

According to the dissent, the University's conclusory footnote preserved its arguments because Isabelle "understood [it] and addressed it in her response brief." Dissent at 1015. But all Isabelle did was quickly distinguish the University's inapt cases in her own footnote. *See* R.144 at 24 n.5. In doing so, she didn't save the school from the consequences of its forfeiture. *Cf. Costello*, 651 F.3d at 635 (noting that, when a movant fails to raise an argument on summary judgment, a non-movant will not erase that forfeiture by providing some evidence on the issue). After all, the question for forfeiture is not whether the University's footnote legibly identified the off-campus question: This Court's rule is that footnotes and conclusory arguments—clear or not—don't preserve an issue. *See supra*

pp 18-19. Because the University failed to raise and develop the argument in text in its initial brief, Isabelle had no obligation to identify a dispute of fact on this question and the University failed preserve the issue for appeal. *See supra* pp. 17-20.

4. This Court's preservation doctrine makes good sense, and it aligns with the practice of other courts. *See, e.g.*, *Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 180 n.6 (2d Cir. 2025); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (Alito, J.). If, however, this en banc Court decides to adopt a new rule and hold that the University preserved the argument, it should remand to allow the parties to develop the record. At the time of summary judgment briefing, this Court's longstanding precedent meant Isabelle had no obligation to do so. If this Court changes that law, it should allow Isabelle the chance to introduce her evidence.

## B. A jury could find the University exercised control over the context of the harassment

The University's forfeited argument is wrong. *See* ReplyBr.18, 21-26. A jury could find that the University exercised control over both the on-campus, post-assault hostile environment and the initial sexual assaults.

## 1. A jury could find the University exercised control over the post-assault hostile environment

A jury could find, as the University itself concluded, that Isabelle experienced a sexually hostile environment on its campus after the sexual assaults. *See supra* pp. 12-13; OpeningBr.35-40. The University doesn't dispute it exercises control over its campus. *See* AnsweringBr.30. Accordingly, a jury could find that the University exercised control over that hostile environment. *See* ReplyBr.18.

The University's control over the context of the post-notice hostile environment is the most important control for this case. The purpose of the control requirement is to ensure a school is only liable for its own failures, rather than discrimination beyond its reach. ReplyBr.21-22. Isabelle doesn't contend the University violated the law by failing to prevent her sexual assaults; she doesn't argue the assaults are "reasonably attributable to the school." Dissent at 1015. Rather, she faults the University for its clearly unreasonable response after the assaults, which exposed her to an ongoing hostile environment on campus that severely disrupted her education. *See supra* Parts I, II. That's why the deliberate indifference inquiry turns on the University's post-assault conduct. *See, e.g.*, *supra* Part I; *Fairfax*, 1 F.4th at 271-73. For the same reason, it also

makes sense to focus the control inquiry on the University's control over the on-campus hostile environment it may be liable for creating. *See, e.g.*, *Doe v. Morehouse Coll., Inc.*, 622 F.Supp.3d 1279, 1287 (N.D. Ga. 2022); *L.E. v. Lakeland Joint Sch. Dist. #272*, 403 F.Supp.3d 888, 899-900 (D. Idaho 2019); Statement of Interest of the United States at 11-14, *Farmer v. Kan. State Univ.*, No. 2:16-cv-02256 (D. Kan. July 1, 2016), https://www.justice.gov/crt/case-document/file/906097/download; *see also supra* pp. 12-13 (explaining the presence of a student's assailant may create a hostile environment).

## 2. A jury could find the University exercised control over the context of the sexual assaults

1. In the alternative, a jury could also find that the University had control over the context of the initial sexual assaults. *See* ReplyBr.21-26. Title IX's text is, again, the key.

*Davis* rooted the control-over-context requirement in Title IX's statutory prohibition in "discrimination *under* [an] education program or activity," 20 U.S.C. § 1681(a) (emphasis added); *see Davis*, 526 U.S. at 645 (connecting "control over context" to "under"). In interpreting this portion of Title IX's text, the Supreme Court adopted a series of dictionary definitions of "under." *Davis*, 526 U.S. at 645. All go to regulatory authority:

"subject to the authority, direction, or supervision of," "in or into the condition of subjection, regulation, or subordination," "subject to the guidance and instruction of." *Id.* (quoting Random House Dictionary of the English Language 1543 (1966) and Webster's Third New International Dictionary 2487 (1961)). Based on these definitions, the Court concluded the statute's use of "under" meant that "the harassment must take place in a context subject to the school district's control." *Id.* at 645. A school, then, may be liable for its deliberate indifference to sexual harassment that occurs within any context over which the school exercises regulatory authority. *See Owens v. La. State Univ.*, No. CV 21-242, 2023 WL 8880380, at *10-11 (M.D. La. Dec. 22, 2023) (holding school could be liable for causing off-campus rape based, in part, on *Davis*'s definitions of "under").[5]

The Court's adoption of these definitions reflected a considered choice. The meaning of "under" was a point of disagreement between the majority and the dissent. The latter would have adopted alternative dictionary definitions of "under" to mean something like "pursuant to, in

---

[5] By statute, an entire University is a single "program or activity." 20 U.S.C. § 1687. Accordingly, the question is whether the discrimination occurs "under" the University as a whole.

accordance with, or as authorized or provided by." *Davis*, 526 U.S. at 659-60 (Kennedy, J., dissenting). (The dissent took "under" to mean schools may only be liable for harassment by their agents, not students. *Id.* at 660.) The majority's definition of "under" won the day. But, notably, none of the justices read the word as the University or dissent urge—to mean "within." *See, e.g.*, Dissent at 1015 (asserting a school may not be liable for deliberate indifference to "peer harassment" that doesn't "occur[] *in* a school's programs and activities" (emphasis added)).

2. Disciplinary and other regulatory authority can provide a school control over the context of harassment. ReplyBr.22-24; *Brown*, 82 F.4th at 874-79. Even on campus, disciplinary authority is often the primary way that schools control the settings in which harassment occurs. When a student is harassed behind a dorm room's closed door, or in a teacher's private office, officials may not exercise contemporaneous physical control sufficient to intervene in the moment. *See Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1086-87 (9th Cir. 2006) (describing teacher's sexual harassment during one-on-one classes where "no one else was present" to intervene). But they can impose measures, including discipline, that make it more difficult for harassment to reoccur in that context. *See, e.g.*,

*id.* at 1087-88; *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1287 n.5 (10th Cir. 2017). Schools are sometimes able to exercise similar control over student or employee misconduct that occurs away from campus. *See Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 188 (2021).

3. That much has only become clearer since the parties' original briefing before this Court. In 2023, the en banc Ninth Circuit held that a jury could find that a university exercised control over a house near campus in which a student athlete lived with his teammates, and where he abused a fellow student. *Brown*, 82 F.4th at 874-79. Earlier this year, the Fourth Circuit reaffirmed that "the location of a sexual harassment incident is not always dispositive," and "[t]he critical inquiry … is whether [a school] had the authority to supervise, regulate, or prevent the harassing conduct." *Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 567-68 (4th Cir. 2025). (The Fourth Circuit didn't, however, consider the textualist argument Isabelle presses here.)

4. Here, because of the University's forfeiture, the record about its control over the context of the sexual assaults is limited. But a jury could nonetheless conclude that the University exercised control over it. *See* ReplyBr.25-26. There's no question the University had the power to

regulate student conduct in that context. *Id.* And a jury might find that the University could have used that regulatory authority to reduce the risk of harassment in that context—for example, by suspending or expelling Cephus, leaving him with no reason, or funding, to live in an apartment surrounded on all sides by the University's campus. *See id.*; *Brown*, 82 F.4th at 879.

5. The panel dissent asserts that regulatory authority over harassers can serve only as evidence of control over the harasser, not as evidence of control over context. The Ninth Circuit disagrees. *Brown*, 82 F.4th at 879. So, apparently, does the Supreme Court: In summarizing its liability standard, *Davis* used "the school's disciplinary authority" as a shorthand for the full substantial control requirement. 526 U.S. at 646-67. In doing so, the Supreme Court indicated disciplinary authority may satisfy both components of control—control over the harasser and over the context—and that those components are interrelated.

Plus, disciplinary authority will not always suffice to provide control over context, so there's daylight between the two types of control. If, for example, one student harasses another while both are home for the summer, the school's authority to punish the harasser will offer little

practical control over that context; even the most severe discipline would not affect his ability to harass students. *See* Brief for the United States as Amicus Curiae at 13-14, *Brown*, 82 F.4th 863, No. 20-15568, https://www.justice.gov/jmd/media/1236731/dl.

## IV. Title IX liability does not always require post-notice harassment

The University and panel dissent further contend that the University cannot be liable because its deliberate indifference didn't cause Isabelle to be sexually harassed further after she reported the sexual assaults. This is wrong.

*First*, Isabelle experienced a sexually hostile environment after the University received notice. OpeningBr.35-39. So, a jury could find for Isabelle even if post-notice harassment were necessary.

*Second*, the panel majority was right: A plaintiff may establish a claim under Title IX if her school's deliberate indifference to sexual harassment deprives her of educational opportunities, even if she doesn't experience further harassment. *See* Majority at 1002; ReplyBr.27-35.

1. This consensus position best accords with *Davis* and the statute's text. Reply.Br.28-33. In short: "[D]eliberate indifference to sexual harassment … constitutes 'discrimination' 'on the basis of sex'" forbidden by

Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (quoting *Davis*, 526 U.S. at 643). So, a school may be liable where its deliberate indifference "exclude[s]" a student "from participation" or "denie[s]" her its "benefits." 20 U.S.C. § 1681(a); *accord Hall v. Millersville Univ.*, 22 F.4th 397, 409 n.4 (3d Cir. 2022). Continued harassment is not necessary for a school's deliberate indifference to have these prohibited effects. ReplyBr.30-31 (providing examples from cases); Brief for Rape, Abuse & Incest Nat'l Network as Amicus Curiae at 9-10 (providing examples).

Consistent with the text, *Davis* explained a school can be liable for its own deliberate indifference that "cause[s] students to undergo harassment or make[s] them liable or vulnerable to it." 526 U.S. at 645 (citation modified). The latter path, vulnerability, requires only a potential for harassment. *Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103-04 (10th Cir. 2019); *see Vulnerable*, Webster's Third New International Dictionary 2566-67 (1993) (defining "vulnerable" to mean "*capable* of being wounded" or "*open* to attack or damage" (emphases added)). If, for example, a school's deliberate indifference leaves a student vulnerable to further harassment, and she must therefore drop a class shared with, or

taught by, her harasser to avoid additional abuse, the school may be liable because its discrimination has "excluded" her and "denied" her its "benefits." 20 U.S.C. § 1681(a).

Bringing a "careful eye to context" demonstrates the wisdom of this consensus view. Dissent at 1020 (quoting *Ross*, 598 U.S. at 374). *Davis* noted that "[t]he statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender." 526 U.S. at 650. That prohibition "would mean little if a school could avoid liability by relying on students to protect themselves by curtailing engagement in educational opportunities, the very result the law seeks to prevent." Majority at 1008; *see Farmer*, 918 F.3d at 1104 (explaining how the alternative rule would be counter to "Title IX's objectives"). Plus, *Davis* emphasized that a plaintiff states a claim against a school based on the defendant's "own misconduct," not the harasser's. 526 U.S. at 640-41. So, a University's liability should turn on its deliberate indifference, not on whether the third-party harasser reoffends. *See Farmer*, 918 F.3d at 1104; *Recent Case,* Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019),* 133 Harv. L. Rev. 2611, 2618 (2020).

2. The panel dissent disagrees (at 1020-21). It asserts, first, that the term "subjects," as used in the statute and interpreted in *Davis*, "presumes that further harassment has actually occurred." Dissent at 1021. But that conflicts with *Davis*'s more expansive definition of "subjects" that includes not only "caus[ing] [students] to undergo harassment" but also "mak[ing]" them liable or vulnerable" to it. *See* 526 U.S. at 645. As explained, that vulnerability doesn't require post-notice harassment. *See supra* p. 29. Taking the Supreme Court at its word is not an inappropriate "pars[ing]." Dissent at 1020.

The panel dissent agrees that courts must give meaning to both the "cause to undergo" and "make vulnerable to" clauses. To fit its narrowed definition of "subjects," the dissent proposes an alternative theory about what those two phrases could mean if both must lead to additional harassment: The first refers to schools' "*commission[s]* (directly causing further harassment)" and the second to "*omission[s]* (creating vulnerability that leads to further harassment)." Dissent at 1021. But that superimposed distinction doesn't reflect the meaning of the two phrases.

"Cause" and "make" are synonyms. *See Make*, Black's Law Dictionary (12th ed. 2024) ("1. To cause (something) to exist"). Both words can

refer either to actions or inactions. *See, e.g.*, *id.* (giving examples of the use of "make," including "to make law"); Restatement (Second) of Torts § 9 (Am. L. Inst. 1965) (explaining that "a particular act *or omission* may be the legal *cause* of an invasion of another's interest" (emphasis added)).

And the phrases "cause to undergo" and "make vulnerable to" are both used to describe actions and inactions. *See, e.g.*, *Smith v. United States*, 360 U.S. 1, 9 (1959) (explaining that "[t]o construe the provisions of the Rule loosely … would make [defendants] vulnerable to summary treatment"); *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (recognizing claim if prison's "fail[ure] to provide [a prisoner]" information "caused him to undergo medical treatment that he [otherwise] would have refused"). A school could "cause [a student] to undergo" harassment through inaction, such as by failing to transfer a student out of a dorm room shared with her harasser. A school could also "make [a student] vulnerable to" sexual harassment through an affirmative act, such as assigning the student to a teacher with a known history of abuse.

Plus, elsewhere in *Davis*, the Supreme Court used "expose" in place of "make liable or vulnerable to." 526 U.S. at 645. "[E]xpose" hardly suggests passivity. *See, e.g.*, *Act*, Black's Law Dictionary (12th ed. 2024)

(describing "an unlawful and dangerous *act*" as "[a]ny forbidden *act* that *exposes* another person to a risk of serious injury" (emphasis added)).[6]

3. The panel dissent also criticizes the majority's view as rendering a nullity *Davis*'s requirement that deliberate indifference "subject" students to harassment. It contends that "[w]hen a school is deliberately indifferent to severe, pervasive, and objectively offensive harassment in its programs and activities, students are always left vulnerable to further harassment." Dissent at 1021. That's not right. Some students never return to school after reporting—sometimes because of their school's clearly unreasonable response—so cannot be vulnerable to additional harassment. *See, e.g.*, *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (describing victims banned from graduation due to behavior attributable to harassment, which they reported days before graduating); *A.P. v. Fayette Cnty. Sch. Dist.*, No. 21-12562, 2023 WL 4174070, at *3-4 (11th Cir. June 26, 2023) (describing student expelled shortly after

---

[6] A concurrence to the Sixth Circuit's *Kollaritsch¸* cited by the panel dissent, wrote that a school "causes" harassment "directly" if it "sen[ds] disparaging emails to just its female students." 944 F.3d at 628 (Thapar, J., concurring). But *Davis* applies only "[i]f a funding recipient does not engage in harassment directly." 526 U.S. at 644.

report of harassment, and so incapable of risking further harassment); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1056 (8th Cir. 2017*)* (describing plaintiff raped while briefly visiting a college).

4. Finally, that Title IX is a Spending Clause statute doesn't change the answer here. ReplyBr.34-35. The law is clear that deliberate indifference to known sexual harassment violates Title IX. *See, e.g.*, *Davis*, 526 U.S. at 647. The Spending Clause doesn't require more granular notice in a manner "resembling qualified immunity." *Soule v. Conn. Ass'n of Sch., Inc.*, 90 F.4th 34, 61 (2d Cir. 2023) (en banc) (Menashi, J., concurring).

## CONCLUSION

For the reasons explained, the Court should reverse the judgment below and remand for further proceedings.

November 25, 2025

Respectfully submitted,

/s/ *Alexandra Z. Brodsky*
Alexandra Z. Brodsky
Adele P. Kimmel
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net
akimmel@publicjustice.net

John Clune
Christopher Ford
Lucy Walker
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street
Suite 200
Boulder, CO 80302
(303) 442-6514
clune@hbcboulder.com
ford@hbcboulder.com
walker@hbcboulder.com

Robert Theine Pledl
DAVIS & PLEDL S.C.
1433 N. Water Street
Suite 400
Milwaukee, WI 53202
(414) 488-1354
rtp@davisandpledl.com

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Court's September 22, 2025, order because it contains 7,000 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font.

Dated: November 25, 2025

/s/ Alexandra Z. Brodsky
Alexandra Z. Brodsky
*Counsel for Plaintiff-Appellant*